TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00350-CR






James Bell IV, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT

NO. 65583, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 A jury found James Bell IV guilty of possession with intent to deliver cocaine in an
amount of four grams or more but less than 200 grams. See Tex. Health & Safety Code Ann.
§ 481.112 (West 2010). After Bell pleaded true to allegations of prior convictions, the district court
sentenced him to forty years' imprisonment and a $2,000 fine. Bell appeals, asking this Court to
reverse his conviction and remand for a new trial because, he asserts, the admission of eleven
exhibits, statements made by Bell while in custody, and testimony of Bell's roommate amounted to
"fundamental error or plain error." We will affirm the district court's judgment.


BACKGROUND

 The underlying facts of this case are not disputed on appeal. Officers Mitchell and
Bradley of the Killeen Police Department were dispatched to an apartment complex to investigate
the smell of marijuana reported to be coming from one of the apartments, apartment D. When the
officers knocked on the door, there was no answer, but they could smell marijuana. As they were
about to leave the complex, Bell arrived in a Ford Explorer and went to apartment D with keys in
his hand. The officers approached Bell and asked him for identification. Bell responded that his
identification was in the Explorer, so he went to retrieve it, but returned empty handed and said that
he must have left it in the apartment. Bell then unlocked the door to the apartment, and Mitchell
positioned himself so that he could see into apartment to make sure that no one else was inside. As
Bell entered the apartment, Mitchell and Bradley could smell freshly burned and raw marijuana.
Mitchell was also able to see loose marijuana sitting on a red tray on the coffee table in the
apartment. As appellant came back to shut the door, the officers entered the apartment and again
asked Bell for identification. Bell responded that it was actually going to be in the Explorer in a
green "Cricket" bag behind the driver's seat. Mitchell asked if he could retrieve the identification
for Bell, and Bell replied, "Yeah, go ahead," and gave Mitchell the keys to the Explorer.

 Mitchell went to the Explorer and looked for the Cricket bag. He found the bag
behind the driver seat, as Bell said it would be. On top of the Cricket bag there were "two baggies,"
one of which contained several smaller bags of cocaine and one of which contained crack cocaine.
Mitchell looked in the bag and found another baggie of cocaine and a card with Bell's name on it.
He then brought the Cricket bag to Bell and asked whether this was the bag he was taking about and
whether this bag belonged to him. Bell said yes. Mitchell informed Bell that he had found cocaine
and asked Bell if Bell had anything else on him. Bell said he had marijuana in his pocket. Mitchell
recovered the marijuana and placed Bell under arrest.

 The officers planned to seat Bell on the couch in the apartment, but they wanted to
search it first "for officer safety and [Bell's] safety." Under the couch cushion, Bradley found a
loaded Hi-Point 9mm handgun, Bell's wallet with identification in it, and a black Adidas bag, which
was open and had another baggie of cocaine sticking out of it. The officers also cleared the coffee
table in front of the couch, which contained the red tray with loose marijuana and a digital scale.
Then they allowed Bell to sit down.

 At some point, Bell volunteered that the apartment did not actually belong to him;
he was staying there, but the lease was in the name of his girlfriend, Myna Jean Trevino, who worked
nearby. Bell said he had just dropped her off at work. Bell gave Mitchell Trevino's phone number,
and Mitchell called her to ask whether Bell belonged in the apartment. She confirmed that Bell was
staying with her. She then came back to the apartment at Mitchell's request. When she arrived, she
told the officers that everything they found in the apartment belonged to her. However, she later said
that she was unaware of the cocaine, and that she was trying to "take the fall" for the marijuana,
which was hers. The officers explained that they were going to search the rest of the apartment.
Trevino initially did not consent to a search, so the officers called a detective, who instructed them to
"freeze the scene" until they could obtain a search warrant. During that phone conversation, Trevino
changed her mind and signed a form consenting to the search. She also asked to have a drink from
a particular cup that was on a coffee table, and when the officer handed her the cup, he found a
baggie of crack cocaine underneath it. While searching the apartment, the officers also found crack
cocaine hidden in a candle holder.

 All of the evidence collected was admitted at trial without objection. (1) In fact, Bell's
trial counsel made only one objection during the trial, during the State's closing argument, when he
objected to the State's explanation "[i]f you find that he possessed [the drugs] either jointly or by
himself, the man is guilty of the offense." Bell's attorney objected on the grounds that "it's required
to prove that he intended to possess and with the intent to deliver." This objection was overruled.

 Bell's attorney called one witness--Trevino--in Bell's defense. Trevino testified
that the cocaine belonged to Bell and she had no knowledge of it prior to Bell's arrest. In response
to questioning by Bell's attorney, Trevino testified that she was upset that, as a result of the incident
with Bell, she was in jail for a month before making bail. Bell's attorney then asked "How long was
Mr. Bell in?" Trevino responded, "Thirty minutes." Counsel followed up with the question, "You
seem upset at that?" Trevino elaborated that she was "living [her] life normally" except for occasional
marijuana use, and that she was upset that Bell did not help her make even a fourth of her bond after
she let him stay with her, so she "had to borrow money from everywhere," while he was able to come
up with whatever money was necessary to make his bond in thirty minutes. On cross examination,
the State asked "Do you know what size bond Mr. Bell was able to make within 30 minutes of being
arrested?" And Trevino responded, "$50,000 bond." In the State's final argument, the prosecutor
emphasized this testimony:


you can consider how quickly the defendant made bond. You heard from Miss Trevino
that the defendant made a $50,000 bond in 30 minutes. He's living at someone else's
house, driving someone else's car, but yet he's making a $50,000 bond. Where do
you think he's getting that money? You can consider that.


In reality, Bell had made bail within thirty minutes of when it was set, but he had actually spent two
days in jail before bail was set. Thus, Trevino's testimony suggesting that Bell was only in jail for
thirty minutes was false.

 After being convicted by the jury, Bell was sentenced by the district court to forty
years' imprisonment and a $2000 fine. Bell appeals, asserting in four issues that (1) the district court
erred in admitting ten of the State's exhibits because they "are the products of the illegal search
of Appellant's apartment"; (2) the district court erred in admitting a manila envelope that "is
covered with stickers which contain inadmissible hearsay"; (3) the district court "erred in admitting
Appellant's oral custodial statements" when "there was no evidence of Miranda warnings and
Article 38.22 safeguards"; (2) and (4) "the State knowingly used false or misleading evidence that
Appellant had posted a $50,000 bond 30 minutes after his arrest." Appellant acknowledges that
Bell's motion for new trial "raised no grounds other than the interests of justice" (3) and "[t]here were
no objections to admission of highly incriminatory evidence." (4) But he asserts that the evidence was
"gathered in clear violation of the Constitutions of the United States and Texas as well as Texas
statutory law." He therefore urges that "Texas should either adopt the federal plain error standard
or apply the Marcus test or a similar formulation in applying the fundamental error provision of
Rule 103(d)." See Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be
considered even though it was not brought to the court's attention"); Tex. R. Evid.103(d) (stating
courts may "take notice of fundamental errors affecting substantial rights although they were not
brought to the attention of the court"); United States v. Marcus, 560 U.S. ___, ___, 130 S. Ct. 2159
(2010). Under this test, Bell contends, forfeited error (i.e., error for which no objection has been
made) should be reviewable for plain error, while waived error (i.e., a party's relinquishment of a
known right) would be unreviewable. Bell urges that adopting such a standard "would not only see
that justice is done but prevent writs of habeas corpus based on ineffective assistance of counsel."
The State responds that "there is no reason to consider the adoption of the federal rule and the
abandonment of long standing precedent" that already addresses fundamental error in Texas and
that Bell's arguments fail even under federal rule 52 and Marcus.


DISCUSSION

 We are bound by Texas law in determining whether Bell is entitled to the relief he
seeks. To preserve error for appellate review, the complaining party must have made an objection,
motion, or request stating "the grounds for the ruling that the complaining party sought from the trial
court with sufficient specificity to make the trial court aware of the complaint, unless the specific
grounds were apparent from the context." Tex. R. App. P. 33.1(a)(1)(A); Clark v. State, 365 S.W.3d
333, ___, No. PD-0218-10, 2012 Tex. Crim. App. LEXIS 649, at *12 (Tex. Crim. App. May 9, 2012).
"The point of error on appeal must comport with the objection made at trial." Clark, 365 S.W.3d
at___, 2012 Tex. Crim. App. LEXIS 649, at *12. Therefore, if a party fails to properly object to
errors--even constitutional errors--at trial, these errors can be forfeited. Id.; Briggs v. State,
789 S.W.2d 918, 924 (Tex. Crim. App. 1990). A reviewing court should not address the merits of
forfeited errors on appeal. Wilson v. State, 311 S.W.3d 452, 473-74 (Tex. Crim. App. 2010);
Peavey v. State, 248 S.W.3d 455, 470 (Tex. App.--Austin 2008, pet. ref'd). However, "an appellate
court may, in rare cases, 'take notice of fundamental errors affecting substantial rights although
they were not brought to the attention of the trial court.'" Boler v. State, 177 S.W.3d 366, 373
(Tex. App.--Houston [1st Dist.] 2005, pet. ref'd) (quoting Tex. R. Evid. 103(d)); see Marin v. State,
851 S.W.2d 275, 279 (Tex. Crim. App. 1993).

 Bell presents no argument or authority suggesting that his conviction should be
reversed based on fundamental error under rule of evidence 103(d); he instead relies exclusively
on the four-part plain-error test that represents the U.S. Supreme Court's interpretation of federal
rule 52(b). (5) No Texas court has adopted federal rule 52's plain-error standard, and we decline to
do so here. See Solis v. State, No. 14-06-00502-CR, 2007 Tex. App. LEXIS 2858, at *4-6 (Tex.
App.--Houston [14th Dist.] Apr. 12, 2007, no pet.) (mem. op.) (declining to apply federal rule 52
to consider unpreserved error because "the federal rules of procedure apply in federal courts,
not state courts"); Flores v. State, No. 13-99-561-CR, 2001 Tex. App. LEXIS 1091, at * 4 (Tex.
App.--Corpus Christi Feb. 15, 2001, no pet.) (not designated for publication) (declining to review
conviction under plain-error test and stating "[t]he Federal Rules of Criminal Procedure are
applicable to federal trials, not state trials"). As such, Bell has not shown that he is excepted from
the general error-preservation requirement. See Boler, 177 S.W.3d at 373. Further, because the
record shows, and Bell has acknowledged, he made no objection, motion, or request complaining
of the admission of the evidence and arguments about which he now complains on appeal, he has
failed to preserve error for any of the issues he raises on appeal. See Tex. R. App. P. 33.1(a);
Saldano v. State, 70 S.W.3d 873, 886-89 (Tex. Crim. App. 2002) (discussing error preservation
and waivable and forfeitable rights); Peavey, 248 S.W.3d at 470; see also Resendez v. State,
306 S.W.3d 308, 315-17 (Tex. Crim. App. 2009) (holding appellant did not preserve his article 38.22
argument for appeal where he did not make sufficiently specific objection in trial court); Marin,
851 S.W.2d at 278 (stating that trial judge has no duty to exclude hearsay absent objection of party
and using rule against hearsay as example of rule that can be forfeited); Smith v. State, 721 S.W.2d
844, 855 (Tex. Crim. App. 1986) (where record did not reflect whether appellant was given Miranda
warnings, court held error was not preserved for review because appellant did not object at trial);
Hajjar v. State, 176 S.W.3d 554, 566 (Tex. App.--Houston [1st Dist.] 2004, pet. ref'd) (holding
that by failing to object to prosecutorial misconduct at trial, "appellant has preserved nothing for
our review"); Bennett v. State, 82 S.W.3d 397, 399 (Tex. App.--Austin 2002, no pet.) (holding
that "[n]o error is preserved" where appellant did not move to suppress or otherwise object to
evidence allegedly seized as result of unlawful search). Consequently, there is no basis for reversing
Bell's conviction.


CONCLUSION

 We affirm the district court's judgment.


 __________________________________________

 David Puryear, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: July 25, 2012

Do Not Publish
1. Bell also does not appear to have filed a motion to suppress.
2. See Miranda v. Arizona, 384 U.S. 436 (1966); Tex. Code Crim. Proc. Ann. art. 38.22 (West
2005).
3. We note that although the motion for new trial argued only for a new trial in the interest
of justice, Bell's affidavit in support of his motion for new trial states, without elaboration, "No
search warrant." This statement in his affidavit is insufficient to preserve the issue for appeal. See
Krause v. State, 243 S.W.3d 95, 105 (Tex. App.--Houston [1st Dist.] 2007, pet. ref'd) (holding
motion to suppress must be timely and sufficiently specific to inform trial court of complaint);
Bennett v. State, 82 S.W.3d 397, 399 (Tex. App.--Austin 2002, no pet.) (holding no error preserved
where appellant did not move to suppress or otherwise object to evidence allegedly seized as result
of unlawful search); Reha v. State, No. 14-95-01349-CR, 1997 Tex. App. LEXIS 5114, at *3, *10
(Tex. App.--Houston [14th Dist.] Sept. 25, 1997, pet. ref'd) (not designated for publication) (citing
Massey v. State, 933 S.W.2d 141, 148 (Tex. Crim. App. 1996)) (holding motion to suppress that did
not identify evidence seized pursuant to the defendant's arrest failed to lodge a specific objection
as required and thus failed to preserve claim for review).
4. Regarding the eleven exhibits that are the subject of Bell's first two issues, Bell's counsel
stated at trial that he had "no objection" to those exhibits as they were admitted.
5. In United States v. Marcus, the Court wrote:


Rule 52(b) permits an appellate court to recognize a "plain error that affects
substantial rights," even if the claim of error was "not brought" to the district
court's "attention." Lower courts, of course, must apply the Rule as this Court has
interpreted it. And the cases that set forth our interpretation hold that an appellate
court may, in its discretion, correct an error not raised at trial only where the
appellant demonstrates that (1) there is an "error"; (2) the error is "clear or obvious,
rather than subject to reasonable dispute"; (3) the error "affected the appellant's
substantial rights, which in the ordinary case means" it "affected the outcome of the
district court proceedings"; and (4) "the error seriously affect[s] the fairness, integrity
or public reputation of judicial proceedings."


560 U.S. ___, ___, 130 S. Ct. 2159, 2164 (2010) (citations omitted).