**AFFIRMED; Opinion Filed October 31, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01259-CR

### CHRISTOPHER ALAN LUPER, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 59th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. 062211**

## MEMORANDUM OPINION

Before Justices FitzGerald, Fillmore, and Stoddart
Opinion by Justice Stoddart

A jury convicted Christopher Alan Luper of aggravated assault with a deadly weapon involving family violence and sentenced him to 45 years' confinement. In his first three issues, Luper argues his conviction should be reversed because he was denied the right to effectively cross-examine the complaining witnesses and a police officer in violation of the Confrontation Clause of the Sixth Amendment, the trial court refused his requested self-defense jury instruction, and the evidence was insufficient to establish a dating relationship between Luper and the complainant. He also argues the trial court erred by not instructing the jury on the lesser-included offenses of aggravated assault and deadly conduct. We affirm the trial court's judgment.

Luper and Rori Bullis met each other on a dating website called Plentyoffish.com. Over time, they began spending more time together. They went from seeing each other once a week or once every-other week to three or four times per week.

After Luper and Bullis had been dating for awhile, Bullis learned that Luper was still using Plentyoffish.com and was seeing other women. Because Bullis was paying for his cell phone, Bullis checked the cell phone records and saw that Luper was texting and calling five or six different women. Bullis cut off Luper's cell phone, which caused Luper to become "enraged." Luper and Bullis broke up, but began dating again after a couple of weeks. Because Luper continued to communicate with other women, Luper and Bullis broke up again.

After they broke up for the second time, Luper confronted Bullis about instances in which his car was vandalized. Bullis testified that someone poured bleach into Luper's gas tank, "messed with" the tires, keyed his car, and wrote "stuff" on the windows. Bullis denied any involvement in the vandalism.

Bullis testified that one night she decided to go to Luper's house "to try to catch him cheating and to egg his car." She parked around the corner from his house so that Luper would not be able to see her approach the house. She carried a carton of eggs with her. When she walked up to the driveway, she saw a "flash and heard a boom." She then "screamed out, Chris, it's me." Bullis began running back toward her car and kept hearing shots. Then she "was on the ground in excruciating pain, blood going everywhere." Luper continued shooting and shot Bullis while she was on the ground in the street. Luper testified she had "over 200 pellets" in her legs, buttocks, torso, and right arm. The trial court admitted photographs showing Bullis's injuries. Bullis testified without objection that she sustained serious bodily injury. She was at a serious risk of death after the events and she continues to suffer from permanent disfigurement and impaired functionality of her body.

The emergency room physician who treated Bullis testified. Describing what he saw when he first examined Bullis, he stated: "[i]n the left leg we saw a lot of tissue loss, muscle damage, skin peeled away. It looked like a close-range hit. The opposite leg, a little bit more scatter, multiple puncture wounds. . . . there's a couple hundred pieces [of shot]." He concluded that Bullis was fortunate to be alive.

In his first issue, Luper argues that he was denied his Sixth Amendment confrontation right because the trial court precluded him from questioning Bullis and a police officer about the presence of a gun in Bullis's car on the night she was shot. To preserve a complaint for appellate review, a party must present the trial court with a timely, specific request, objection or motion, and obtain a ruling. TEX. R. APP. P. 33.1(a). An appellate contention must comport with the specific objection made at trial. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). When deciding whether an appellate complaint comports with the trial complaint, we look to the context of the objection and the parties' shared understanding at the time. *See id*.

At trial, Luper only complained the trial court should have permitted him to question Bullis and the officer about the gun because the evidence was relevant. Luper did not argue that failing to allow him to question the witnesses would violate his Sixth Amendment right to confront his accuser. Nothing in Luper's argument in the trial court gave the trial court notice that he believed the trial court's rulings violated his constitutional right. Because Luper's complaint on appeal does not comport with his complaint in the trial court, we conclude he did not preserve his first issue for review.

In his second issue, Luper argues the trial court erred by refusing to submit his requested jury instruction on self-defense. We review a trial court's denial of a requested jury instruction for an abuse of discretion. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000). A trial court does not abuse its discretion when its decision is within the zone of reasonable

disagreement. *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). When reviewing claims of jury-charge error, we first determine whether an error actually exists in the charge. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).

A defendant is entitled to an instruction on every defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or uncontradicted, and regardless of what the trial court may think about the credibility of the defense. *See Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008). A trial court may refuse an instruction on a defensive theory if the issue was not raised by the evidence. *See Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007); *see also* TEX. PENAL CODE ANN. § 2.03(c) (West 2011) (defensive jury instruction not submitted to jury unless "evidence [was] admitted supporting the defense"). A defense is supported or raised by the evidence "if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Shaw*, 243 S.W.3d at 657–58. The question of whether a defense is raised by the evidence is a sufficiency question, which we review as a question of law. *Id.* at 658.

A person is justified in using deadly force against another person if: (1) the actor would be justified in using force under section 9.31 of the penal code and (2) when and to the degree the actor reasonably believes the deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force or to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery. *See* TEX. PENAL CODE ANN. § 9.32(a) (West 2011) (Deadly Force in Defense of Person).

There is no evidence in the record that Luper believed anyone, including Bullis, would be attempting to use deadly force against him or would be attempting to commit any of the acts described in section 9.32(a)(2)(B). *See id.* The fact that Luper's car had been vandalized in the

recent past and perhaps Luper received a text message from a friend that someone was going to damage his vehicle that night would not have given rise to a belief that the unknown actor would use or attempt to use unlawful deadly force, against which Luper needed to protect himself. *See id.* § 9.32(a)(2)(A).

Based on the evidence, Luper could not have formed a reasonable belief that Bullis was going to engage in conduct that would entitle him to use deadly force under section 9.32 of the penal code. *See id*. § 9.32(a). Because the evidence did not raise the issue presented by Luper's requested jury instruction, the trial court did not abuse its discretion by refusing to submit that instruction to the jury. We overrule Luper's second issue.

In his third issue, Luper argues his conviction should be reversed because there was insufficient evidence to establish a dating relationship between Luper and Bullis. In a legal sufficiency review, "we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). This standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence." *Id*.

A "dating relationship" is "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." TEX. FAM. CODE ANN. § 71.0021(b) (West 2014). The existence of such a relationship is determined based on consideration of (1) the length of the relationship, (2) the nature of the relationship, and (3) the frequency and type of interaction between the persons involved in the relationship. *Id*.

Bullis testified she met Luper on an online dating website. As their relationship progressed, they spent more time together and "[u]p to three and four times a week he would be staying at my house." They had a sexual relationship. Bullis considered Luper to be her

boyfriend. When asked whether Luper told Bullis he was her boyfriend, she replied: "We had conversations about it. Just like we had conversations of marriage and having a life together." She had the following exchange with the prosecutor:

> Q. You let him share your house and your bed.
> A. Yes.
> Q. He told you he loved you.
> A. Yes.

Bullis testified that when she discovered Luper was communicating with five or six other women, the couple broke up. However, they began dating again a couple of weeks later "because he was sorry and he was going to change." And then Bullis caught Luper cheating again. She testified: "It was pretty much just the same thing as it was before. He was at my house constantly, but there was still communication with other women. Same story." She testified she had a dating relationship with Luper at one time.

Additionally, a police officer testified that when he interviewed Luper, Luper told the officer that Luper and Bullis were dating.

Viewing the evidence in the light most favorable to the verdict, we conclude the evidence presented to the jury, when viewed together, would allow a rational trier of fact to find beyond a reasonable doubt that Luper and Bullis were in a dating relationship. *See Adames*, 353 S.W.3d at 860. The testimony shows that the parties met on a website intended for finding people to date, Luper spent three to four nights a week at Bullis's house toward the end of their relationship, their relationship was sexual, they had conversations about marriage and having a life together, Luper told Bullis he loved her, and Luper told a police officer that he and Bullis were dating. Because a rational trier of fact could have concluded Luper and Bullis were in a dating relationship, we overrule Luper's third issue.

In his fourth issue, Luper argues the trial court erred by denying his request for the jury to consider the lesser-included offenses of aggravated assault and deadly conduct. The State agrees

–6–

both offenses are lesser-included offenses in this case, but argues the trial court properly excluded them from the jury charge.

Luper's argument that the jury charge should have included a charge for aggravated assault is based on his argument that the evidence was insufficient to show he was in a dating relationship with Bullis. His brief states: "The reason for this requested charge [for aggravated assault] will be fully briefed in Issue No. III, because Luper denies that he was in a dating relationship pursuant to Section 71.0021(b), of the Texas Family Code." As we have already concluded that the evidence was sufficient to show that Luper and Bullis were in a dating relationship and because the only grounds that Luper argues is that there was not sufficient evidence of a dating relationship, we do not consider his argument that aggravated assault should have been included in the jury charge.

Luper argues that he was entitled to an instruction on the lesser-included offense of deadly conduct pursuant to section 22.05(b)(1) of the penal code, which states that a "person commits an offense if he knowingly discharges a firearm at or in the direction of" one or more individuals. *See* TEX. PENAL CODE ANN. § 22.05(b)(1) (West 2011). Luper offers two reasons he believes he was entitled to this instruction. First, Luper's brief states that he "denies that he was in a dating relationship pursuant to Section 71.0021(b), please see Issue No. Three above." We have already discussed and rejected this argument. Second, he argues there was evidence he was "startled" and so he fired the shotgun. "Furthermore, his fear an [sic] apprehension was heightened based on the text message that someone was going to come and damage his vehicle, plus prior incidents of criminal mischief."

The trial court's decision to submit or deny a lesser included offense instruction is reviewed for an abuse of discretion. *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004). We apply a two-pronged test to determine if the trial court should have given a jury

–7–

charge on a lesser-included offense. *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007). We first determine if the proof necessary to establish the charged offense includes the lesser offense. *Id.* If it does, we then review the evidence to determine that if appellant is guilty, he is guilty only of the lesser offense. *Id.* at 536.

The second step is a question of fact and is based on the evidence presented at trial. *Cavazos v. State*, 382 S.W.3d 377, 383 (Tex. Crim. App. 2012). This step requires the reviewing court to determine whether "there is some evidence in the record which would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense." *Rice v. State*, 333 S.W.3d 140, 145 (Tex. Crim. App. 2011) (citing *Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006); *Hall*, 225 S.W.3d at 536). This evidence must show the lesser included offense is a "valid, rational alternative to the charged offense." *Id.* Moreover, it "is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. Rather there must be some evidence directly germane to a lesser-included offense for the factfinder to consider before an instruction on a lesser-included offense is warranted." *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997).

When determining the question of fact under the second step, we consider all of the evidence actually presented at trial. *Hayward v. State*, 158 S.W.3d 476, 478 (Tex. Crim. App. 2005). In this review, "we cannot consider 'whether the evidence is credible, controverted, or in conflict with other evidence.'" *Isaac v. State*, 167 S.W.3d 469, 475 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (quoting *Hall*, 158 S.W.3d at 473). Satisfying the second step requires more than mere speculation; "it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Cavazos*, 382 S.W.3d at 385.

Even if we were to conclude that deadly conduct is a lesser included offense of aggravated assault (as Luper argues and the State concedes), we cannot conclude that if Luper is

guilty, he is only guilty of the lesser offense. A person commits aggravated assault with a deadly weapon involving family violence if the evidence shows that he intentionally, knowingly, or recklessly caused bodily injury to a person with whom he is or has been in a dating relationship and used or exhibited a deadly weapon during the commission of the crime. *See* TEX. PENAL CODE ANN. §§ 22.01, 22.02 (West Supp. 2014); TEX. FAMILY CODE § 71.0021(b). The offense of deadly conduct is committed if a person "knowingly discharges a firearm at or in the direction of" one or more individuals. *See* TEX. PENAL CODE ANN. § 22.05(b)(1).

The evidence clearly established that Bullis suffered serious bodily injury. She testified that she had "over 200 pellets" in her legs, buttocks, torso, and right arm, she was in excruciating pain, and she suffered blood loss. The treating physician testified that Bullis suffered "a lot of tissue loss, muscle damage" and the skin on her leg was peeled away. On her other leg, "a little bit more scatter, multiple puncture wounds. . . . there's a couple hundred pieces [of shot]."

Given the evidence in this case, the jury could not have rationally found that Luper only knowingly discharged a firearm in Bullis's direction. We conclude the trial court did not err by denying Luper's request for a lesser-included offense instruction. We overrule Luper's fourth issue.

We affirm the trial court's judgment.

Do Not Publish
TEX. R. APP. P. 47                          /Craig Stoddart/
131259F.U05                          CRAIG STODDART
                                     JUSTICE

–9–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER ALAN LUPER, Appellant

No. 05-13-01259-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the 59th Judicial District Court, Grayson County, Texas
Trial Court Cause No. 062211.
Opinion delivered by Justice Stoddart.
Justices FitzGerald and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 31st day of October, 2014.