

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0218-10

---

**VELLAR CLARK, III, Appellant**

**v.**

**THE STATE OF TEXAS**

---

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FOURTEENTH COURT OF APPEALS
## HARRIS COUNTY

---

MEYERS, J., delivered the opinion of the Court in which KELLER, P.J., and PRICE, KEASLER, HERVEY, COCHRAN, and ALCALA, JJ., joined. WOMACK and JOHNSON, JJ., concurred.

## O P I N I O N

A jury convicted Appellant, Vellar Clark, III, of capital murder and sentenced him to life in prison with no possibility of parole. TEX. PENAL CODE § 19.03. He appealed, claiming that he was denied due process at his trial. The court of appeals affirmed the conviction. *Clark v. State*, 305 S.W.3d 351 (Tex. App.–Houston [14th Dist.] 2010). We granted review to determine whether Appellant's objections at trial put the court on notice

of his due-process, fair-trial complaint. We affirm the judgment of the court of appeals.

**I. FACTS**

Appellant met Gwen Sneed when they were both part of a motorcycle club. Although Clark was married at the time, he began a relationship with Sneed and eventually moved in with her. They had a son together, but he died as a baby. Around the time of the baby's death, Sneed was interviewed by CPS. At that time, Sneed told the CPS worker that she had suicidal thoughts and feelings. However, when interviewed by CPS shortly before her death, her mental state had changed for the better. The CPS worker testified at Appellant's trial that Sneed "had a very good outlook to life at that time" because "something good was going to happen in her life." Testimony indicated that Sneed had become pregnant with another child and she considered the pregnancy to be a miracle because she had previously undergone a tubal ligation. Several witnesses testified that Appellant asked Sneed to abort the child, but she refused.

On Sunday, March 26, 2006, Sneed left home on her motorcycle to attend an anger-management class at 11:00 a.m. The record indicates that these classes were court-ordered after Sneed was convicted of family assault against her mother. At around 4:00 p.m., a security guard found her body in an isolated parking lot. She was lying next to her motorcycle, which still had the key in the ignition, and four bags of white powder were on the ground near her. A shell casing was found about 12 feet from her body. She was wearing jewelry and had identification in her pocket, but neither her cell phone nor a gun

were found at the scene. The medical examiner determined that the cause of death was a gunshot wound behind her left ear, where a bullet had entered and tracked downward and to the right, into the back of the neck. Evidence from the area around the gunshot wound indicated that the gun was not in contact with Sneed's skin; rather it was likely about 20 inches away from her head when it was fired. As a result of Sneed's death, her unborn baby also died.

Sneed's mother, June, saw the story on the evening news and contacted the Houston Police Department when she recognized her daughter's motorcycle. An officer with HPD testified that June suggested they talk to Appellant about the shooting.

Appellant voluntarily spoke with HPD about a week after the shooting. He said that he saw Sneed, by chance, driving to her anger-management class and spoke to her on the phone sometime before noon. He originally told officers that he went to his parents' home later that day, but the cell-phone records of his location indicated that this could not be true. Sneed's and Appellant's cell-phone records showed that they called each other numerous times in the hours leading up to Sneed's death and also indicated that they were near each other when the shooting occurred. When Appellant was confronted with these records, he admitted that he was with Sneed at the time of her death.

At trial, Appellant testified in his defense that Sneed asked him to follow her to the parking lot. He stated that she got upset, grabbed his gun from his car, and asked him whether he was "going to be with her." When Clark responded, "No," she shot herself in

the head. One of the HPD officers who testified stated that, due to the large size of the weapon, it would have been impossible for Sneed, who was right-handed, to shoot herself over her left ear and slightly behind in the back of her head, where the wound was. The medical examiner also testified that she did not believe this to be a suicide but said that, based on the trajectory of the bullet, it could have been possible.

During Appellant's testimony, the defense objected to numerous questions, statements, and tactics of the prosecutor as sidebar, argumentative, mischaracterization, invading the province of the jury, and badgering. For example, the prosecutor asked Appellant, "Are you that hot, that cool, that she would terminate her life...?" The defense objected to this as argumentative, but was overruled by the trial judge. At one point during the cross-examination of the defendant, the prosecuter said, "Wait a second. You've lied to everybody. Is there anybody in this courtroom or that's testified that you haven't lied to?" The defense objected that this was argumentative and badgering the witness. The court overruled the objection, and the defense asked to court to "let the record please reflect that counsel is pointing his finger and standing up and he's yelling." The prosecutor responded, "Yes, I am pointing my finger and I am standing up and I am yelling at you. That's what I'm doing. Is there anybody here that you have not lied to? Anybody?" Again, the defense objected to the relevance and was overruled. Finally, the defense objected to the prosecutor standing up, holding a gun, and stomping his foot as badgering the witness. The court overruled the objection and stated for the record that the

prosecutor was about six feet from the witness and was using the gun, which was pointed at the ground during the questioning of Appellant, as a demonstrative exhibit to question how Sneed could have shot herself.

The defense never objected to a violation of due-process rights during the cross-examination and never moved for a new trial based on the prejudicial effect of the cross-examination on Appellant's right to a fair trial. The jury found Appellant guilty of the charge of capital murder and sentenced him to life in prison with no possibility of parole.

## II. COURT OF APPEALS

On appeal, Appellant argued that the trial court erred in allowing the State to repeatedly badger, harass, and physically intimidate him to the point of denying his right to a fair trial and due process. The court of appeals disagreed, determining that Appellant waived the right to this complaint by not properly preserving error at trial. *Clark,* 305 S.W.3d at 354-55.

The court of appeals said that, under Texas Rule of Appellate Procedure 33.1(a)(1)(A), a party must state the grounds for the ruling sought from the trial court with sufficient specificity to make the trial court aware of the complaint. And, on appeal, the point of error raised by the party must be the same as the objection made during the trial. *Id*. at 354. The court of appeals noted that Appellant objected at trial to the prosecutor's comments, questions, and tactics as sidebar, argumentative, mischaracterization, invading the province of the jury, and badgering, but did not object

to a violation of due process. It was not until his appeal that he raised the issue of the denial of his due-process rights. Finally, Appellant did not object to prosecutorial misconduct at the trial, and the court of appeals determined that the prosecutor's cross-examination did not rise to the level of fundamental error. The court stated that, "The record is simply devoid of a due-process objection or an objection that corresponds with the objections made at the trial level" and held that Appellant waived the issue. *Id*. at 355.

We granted Appellant's petition for discretionary review to determine whether "The Court of Appeals ignored this Court's opinion in *Zillender v. State* in holding that the repeated objections by defense counsel did not put the trial court on notice that Mr. Clark's right to due process was being repeatedly violated."

## III. ARGUMENTS OF THE PARTIES

### A. Appellant's Argument

Appellant argues that the court of appeals erred in ruling that a due-process objection was not preserved because defense counsel's objections to the prosecution's questioning and tactics put the trial court on notice that Appellant's due-process rights were being violated.

Appellant claims that the court of appeals ignored the holdings of *Zillender v. State*, 557 S.W.2d 515 (Tex. Crim. App. 1977), and *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992), which say that no talismanic words are needed to preserve

error as long as the court can understand from the context what the complaint is. Here, the defense repeatedly objected to an "onslaught of inappropriate and unconstitutional tactics of the prosecution." Appellant argues that the State and the court were aware, due to the quantity and type of objections to the prosecutor's cross-examination, that he was being denied a fair trial.

In addition, Appellant contends that the State did not comport with the bounds of a legitimate cross-examination, and the trial court did not perform its duty to ensure one. Defendants who take the stand are subject to the same rules governing the cross-examination of any other witness. *Felder v. State,* 848 S.W.2d 85, 99 (Tex. Crim. App. 1992). The trial judge has the discretion to limit the cross-examination when "a subject is exhausted, or when the cross-examination is designed to annoy, harass, or humiliate, or when the cross-examination might endanger the personal safety of the witness." *Carroll v. State,* 916 S.W.2d 494, 498 (Tex. Crim. App. 1996) (citing *Delaware v. Van Arsdall,* 475 U.S. 673, 678-79 (1986)). Appellant claims that the State harassed and humiliated him, and that the trial court purposefully ignored it, violating his rights to due process.

Finally, Appellant asserts that the prosecutor engaged in prosecutorial misconduct during his cross-examination. Prosecutorial misconduct rises to a due-process violation when it is so significant that it deprives a defendant of a fair trial. *Greer v. Miller,* 483 U.S. 756, 765 (1987). Appellant points to the prosecutor's badgering, repeated sidebars, and physical intimidation as denying him a fair trial. Appellant contends that the trial

court knew of these violations and the nature of the defense objections, which preserved the issue for appeal.

## B. State's Argument

The State contends that Appellant's trial objections to the prosecutor's cross-examination did not preserve the constitutional due-process complaint that he was deprived of a fair trial. The State points out that Appellant never claimed that there was a constitutional violation and never pursued sustained objections with a request for an instruction to disregard or a motion for mistrial. The State says that, because of this, the trial court was never alerted that the basis for Appellant's objections was a denial of due process.

The State shows that under the Texas Rules of Appellate Procedure, constitutional and non-constitutional errors are subject to vastly different analyses on appeal. *See* TEX. R. APP. P. 44.2(a), (b). A constitutional error requires the court to reverse a judgment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *Id*. Therefore, the State argues, the trial court should be alerted as to whether it is being asked to make a simple evidentiary ruling or a constitutional one.

In addition, the State distinguishes cases that Appellant relies on, including *Zillender*. The State points out that, in these cases, the trial objections were connected to the issues raised on appeal. *Zillender,* 557 S.W.2d at 517; *Lankston,* 827 S.W.2d at 909.

Unlike *Zillender* and *Lankston*, Appellant here is raising a constitutional issue on appeal from a simple evidentiary trial objection. *See* 557 S.W.2d at 517; 827 S.W.2d at 909.

Next, the State addresses Appellant's prosecutorial-misconduct allegation and asserts that the prosecutor's cross-examination was proper. The State claims that the statements to which side-bar objections were made and overruled were either permissible statements, actual questions directed at Appellant, or extensions of questions directed at him. Further, when side-bar objections were sustained, Appellant was not consistent in asking the court for an instruction to disregard, which is the normal method of obviating any error. *Bell v. State,* 724 S.W.2d 780, 803 (Tex. Crim. App. 1986).

Finally, the State asserts that the trial court did not abuse its discretion in allowing the State to question Appellant with the gun. *See Lopez v. State,* 18 S.W.3d 220, 222 (Tex. Crim. App. 2000). Because Appellant's defense was that Sneed committed suicide, the State properly attempted to demonstrate the physical implausibility of this claim.

The State argues that Appellant failed to alert the trial court that he was requesting relief based on a violation of his constitutional rights and that the court of appeals properly held that the constitutional argument was not preserved for review.

## IV. CASELAW

To preserve error for appellate review, the Texas Rules of Appellate Procedure require that the record show that the objection "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial

court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A). The point of error on appeal must comport with the objection made at trial. *Thomas v. State,* 723 S.W.2d 696, 700 (Tex. Crim. App. 1986). Therefore, if a party fails to properly object to constitutional errors at trial, these errors can be forfeited. *Briggs v. State,* 789 S.W.2d 918, 924 (Tex. Crim. App. 1990).[1]

In *Zillender v. State*, we held that where the correct ground for an objection is obvious to the judge and opposing counsel, no waiver results from a general or imprecise objection. 557 S.W.2d at 517. There, the prosecutor attempted to use a prior probated conviction to impeach the defendant during cross-examination. The defense objected that the conviction was not final. *Id*. It was determined that, although the objection was based on this lack of finality, it was plausible that the objection was obviously "directed at the admissibility of the prior conviction because of the expiration of the probationary period." *Id*. Because the record reflected that the trial judge took judicial notice of all of the proceedings involving the prior conviction, and that the probationary period of the prior conviction had expired, the State was put on notice by the objection that the conviction was not final and the error was preserved. *Id*. at 518.

While no "hyper-technical or formalistic use of words or phrases" is required in order for an objection to preserve an error, the objecting party must still "let the trial

---

[1] In *Briggs*, we held that the appellant *waived* his rights to confrontation and due-process by failing to object to the admission of certain evidence at trial. However, in *Marin v. State*, 851 S.W.2d 275, 279-80 (Tex. Crim. App. 1993), we clarified that such rights are actually *forfeited* by a failure to object.

judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it." *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (quoting *Lankston*, 827 S.W.2d at 909). In determining whether a complaint on appeal comports with a complaint made at trial, we look to the context of the objection and the shared understanding of the parties at the time. *Lankston*, 827 S.W.2d at 911.

## V. ANALYSIS

The two main purposes of requiring a specific objection are to inform the trial judge of the basis of the objection so that he has an opportunity to rule on it and to allow opposing counsel to remedy the error. *Zillender*, 557 S.W.2d at 517. Usually, for a complaint to be obvious without having been explicitly stated and still satisfy the purposes above, there have been statements or actions on the record that clearly indicate what the judge and opposing counsel understood the argument to be. *Resendez v. State*, 306 S.W.3d 308, 315-16 (Tex. Crim. App. 2009). In *Lankston*, for example, while the defendant's counsel made only a broad objection to violations of the "hearsay rule" the judge, in response, requested that "all the attorneys stay within the parameters of 38.07[2]." 827 S.W.2d at 909. This indicates that there was a shared understanding of the objection, and that the judge had a chance to rule on it. Here, however, there is nothing in the record to indicate that either the judge or prosecutor understood Appellant's evidentiary objections to be complaints of a denial of due process. Twice

during Appellant's cross-examination, the court even asked the defense for the legal basis for the objection, and Appellant never made a due-process objection or indicated that the cross-examination deprived him of his right to a fair trial.

The badgering, sidebar, argumentative, invading the province of the jury, and mischaracterization objections are not so clearly connected to constitutional protections that they can be assumed to be due-process objections. If this were the case, then any objection that is based on a rule intended to ensure a fair trial would preserve a due-process claim for appeal. As the State argues, this would allow any appellant to "bootstrap a constitutional issue from the most innocuous trial objection."

We also agree with the State that the trial court should know when it is being asked to make a constitutional ruling because constitutional error is subject to a much stricter harm analysis on appeal. *See* TEX. R. APP. P. 44.2(a), (b). If we treated objections such as those made by Appellant as raising a due-process claim, a conviction or sentence could be completely overturned based on what appears to be an evidentiary ruling. The court needs to be presented with and have the chance to rule on the specific constitutional objection because it can have such heavy implications on appeal.

Finally, we agree with the court of appeals that no prosecutorial misconduct occurred during the trial. Again, Appellant never objected to prosecutorial misconduct at the trial. While the prosecutor may have been aggressive in his cross-examination of Appellant, his tactics do not rise to the level of fundamental error. *See Arizona v.*

*Fulminate,* 499 U.S. 279, 309-10 (1991) (fundamental error occurs when certain constitutional rights are violated, such as the right to counsel, the right to an impartial judge, the right for there not to be unlawful exclusion of members of the defendant's race from the grand jury, the right to self-representation at trial, or the right to a public trial). We agree with the court of appeals that Appellant forfeited his denial-of-due-process claim by not properly preserving error at trial.

## VI. CONCLUSION

The court of appeals used the correct standard and did not err in failing to consider our holding in *Zillender*. Contrary to Appellant's argument, our holding in *Zillender* does not change the outcome of his appeal. There is nothing in the record that indicates the trial court or prosecutor knew that Appellant was making a due-process claim. Therefore, Appellant never put the court on notice of his due-process, fair-trial complaint, and the issue was forfeited. The judgement of the court of appeals is affirmed.

Meyers, J.

Delivered: May 9, 2012

Publish