

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00033-CR

LAWRENCE DONOVAN                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

### FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

----------

## CONCURRING AND DISSENTING OPINION ON EN BANC RECONSIDERATION

----------

I join in the majority opinion's holding that Appellant forfeited any challenge to the trial court's imposition of the sex-offender-treatment condition to his community supervision. Appellant did not object when the trial court imposed this supplemental condition, Appellant signed the Supplement/Amendment to Conditions of Community Supervision, and he began sex-offender treatment in compliance with that condition; in fact, Appellant's counsel stated at the

adjudication hearing that Appellant did not object to this condition when it was imposed and instead "attempted to do exactly what [the court] asked him to do." By not timely challenging the sex-offender-treatment condition and by instead affirmatively accepting the condition, he forfeited his *Ex parte Evans* complaint that he was denied due process by not being afforded a hearing prior to imposition of this condition.[1] *See Ex parte Evans*, 338 S.W.3d 545, 556 (Tex. Crim. App. 2011) (holding habeas applicant entitled to relief from parole revocation based solely on violation of sex-offender conditions that were imposed without due process "and against which [Evans] . . . protested at every step of the way"); *Speth v. State*, 6 S.W.3d 530, 534–35 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1088 (2000); *Little v. State*, 376 S.W.3d 217, 221 (Tex. App.—Fort Worth 2012, pet. ref'd); *see also* Tex. R. App. P. 33.1(a); *Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009) ("[N]umerous constitutional rights, including those that implicate a defendant's due process rights, may be forfeited for purposes of appellate review unless properly preserved.").

But Appellant complains on appeal not only of the imposition of the sex-offender-treatment condition without a hearing but also of the revocation of his community supervision based on his failure to attend and complete a sex-offender treatment program that required him to discuss and admit to sex

---

[1]Appellant also did not raise this complaint in the trial court. *See Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial.").

offenses of which he had been found not guilty and that were the subject of an

expunction order.[2]   When the trial court imposed the sex-offender-treatment

[2]This issue is fairly subsumed within Appellant's points on appeal.  *See* Tex. R. App. P. 38.1(f) (stating that every point "*will be treated* as covering every subsidiary question that is fairly included") (emphasis added).  Appellant complains in his first point of the trial court's revocation of his community supervision "for failure to complete [a] sex offender treatment program as a condition of his probation for the non-sex offense of injury to a child."  Under that first point, he lists the following subpoints:

> A.  The trial judge misunderstood and therefore gave no [e]ffect to an earlier expunction order entered in the case.

> B.  The trial court misunderstood and therefore gave no [e]ffect to the earlier verdict of not guilty to the charged . . . sex offense.

> C.  The trial court's orders and the revocation hearing predated the court of criminal appeals' landmark decision in *Ex parte Evans* . . . .

Appellant's second point complains of the trial court's revocation of his community supervision "for failure to attend a sex offender treatment program from February 3, 2010, through the date of the revocation hearing" and lists as subpoints:

> A.  Appellant was discharged by one sex offender treatment provider after the provider learned of the [e]ffect of an earlier expunction order entered in the case.

> B.  It was improper for the probation department to require appellant to continue sex offender treatment by choosing a different treatment provider because the expunction order would have prevented all providers from obtaining and then disseminating information involving the earlier charged sex offense.

Appellant's third point complains of the trial court's revocation of his community supervision for failure "to complete two-thirds of a sex offender treatment program on or before August 18, 2010."  Appellant specifically states in his brief that he was "confronted by a Catch-22.  One of the requirements to complete the program entailed Appellant admitting that he was a sex offender."  He further argues that he was found not guilty of the sex offenses and that the records of

3

condition, Appellant could not have objected that treatment would require him to discuss and admit to the acquitted and expunged sex offenses—he did not know at that time that he would be asked to do so in order to complete the treatment.[3] This requirement became evident only after Appellant entered and participated in the program, and when it became evident during treatment that Appellant would have to admit to the offenses as part of treatment, he "protested at every step of the way." *See Evans*, 338 S.W.3d at 556; *Speth*, 6 S.W.3d at 534 n.9 (stating, in holding that a defendant must complain at trial to conditions he finds objectionable, that "[t]his assumes the probationer knew what the conditions were in time to object at trial").

The record reveals that when Appellant began sex-offender treatment, he informed the treatment provider that he had been found not guilty of the sex offenses and that the records of those offenses had been expunged. In November 2008, a few months into the program, Appellant's treatment provider

those offenses had been expunged but that the trial court "nevertheless required Sex Offender Treatment and [revoked] [Appellant's] probation for various failures related to that requirement." According to his brief, "One need only do a cursory review of the three exhibits tendered by the defense in this case to see the private matters [Appellant] was forced to reveal and the restrictions on his life in his attempt to comply with the requirements of Sex Offender Treatment."

[3]Thus, this issue is unlike that in *Speth*, where the appellant's complaint about conditions of community supervision was known at the time the condition was imposed but appellant nevertheless did not object. *See* 6 S.W.3d at 534 (holding complaints about conditions to register as sex offender, to pay for counseling, to refrain from working as chiropractor, to participate in sex offender counseling and take polygraph, and to refrain from contact with minor girls were forfeited by not objecting when conditions imposed).

told Appellant that he could not continue counseling until he either admitted to the sex offenses or passed a polygraph test.[4]  Appellant was told to leave the counseling session, but he returned a couple of weeks later after "probation was able to work it out with Mr. Strain."  In February 2009, Appellant filed a motion to modify the conditions of probation, alleging that the sex-offender-treatment condition of his community supervision required him to

> participate in and successfully complete a sexual offender treatment program that, it part, requires him to:
>
>> (1) admit his guilt for the sex offenses for which he was found "Not Guilty" by Judge Wilson, or face revocation of his deferred adjudication probation for the offense of Injury to a Child; and
>>
>> (2) as an additional prerequisite to successful completion of the required sex offender treatment program, pass a lie detector concerning his involvement in the sex offenses for which he was found "Not Guilty" and for which the Expungement Order was entered.
>
> In addition, [Appellant] has been required to participate in group sex offender counseling sessions in which the therapy provider has, in the presence of other probationers in the treatment program, accused him of dishonest[]y and subjected him to ridicule when he has stated that the sex offenses in question were resolved in his favor, that "Not Guilty" verdicts had been entered, and that those arrests and charges had been expunged.

Although the record does not show that Appellant presented the motion to the trial court or that a hearing was held on the motion, Appellant testified that his

---

[4]Appellant began treatment with "Mr. Medina" but was later transferred to Michael Strain's program.  The record conflicts as to whether Medina or Strain was his treatment provider at this time.

5

attorney and the trial judge had a "conference" in March 2009.[5]  In August 2009, after Appellant's first year of treatment, there was a conference between Appellant's counsel, the State's attorney, the trial court, the community-supervision officer, and Strain.  The trial court decided at the conference that Appellant would not be required to admit to the sex offenses.[6]

After that August conference, Strain told Appellant what to say during group counseling sessions:  "Just state that you're here under deferred adjudication, injury to a child, and you deny the offense, sexual acts, and the reason that you're here is because the Court wants you here."  Appellant did so and continued treatment without incident for almost five months until February 1, 2010, when the issue of Appellant discussing and admitting to the sex offenses arose again.  During a session with a victim therapist, the therapist asked Appellant about "the original sexual allegations," and Appellant refused to discuss them "per court order."  Appellant set up a meeting with Strain two days later to discuss how to proceed and brought with him to the meeting "legal documents" showing the expunction and acquittal of the sex offenses.  After

---

[5]The record does not reflect what was discussed at this conference.  The State noted in a post-submission brief to this court that Appellant's February 2009 "written objections to the sex offender treatment" resulted in the *ex parte* hearing with the judge in March and the August hearing conducted in chambers.

[6]Appellant and his community-supervision officer both testified that the trial court waived the treatment goal that he admit to the offenses, and Strain testified that the trial court decided that the treatment providers "could discuss the sexual offense[s]" but that Appellant's not admitting to the offenses could not be held against him.

reading the documents, which included a handwritten note by Appellant's attorney that it would be illegal for Strain to discuss the sex offenses that were the subject of an expunction order, Strain told Appellant that he could not continue counseling and that he needed "to work it out with the Court."

Appellant called his community-supervision officer the following day and relayed to her that "Strain ha[d] discontinued his treatment for now." Appellant also talked to his attorneys about asking the trial court for clarification on what could be discussed during treatment. Appellant's attorneys met with the trial court less than one week after Appellant's meeting with Strain, and the trial court said it wanted to hear from the community-supervision department on the issue. Strain also sent Appellant's community-supervision officer a letter explaining the confusion as to whether the trial court's previous ruling prohibited any discussions about "the original sexual charges" against Appellant and concluding, "If it is illegal to even discuss that the charges against [Appellant] were originally sexual in nature, I am not sure any useful treatment work can be done." Appellant's community-supervision officer showed Strain's letter to a court officer, who in turn took the letter to the trial court and "briefed the Judge regarding the issue." According to the community-supervision officer, "it was determined that [Appellant] would still be required to attend sex offender treatment."[7]

---

[7]Appellant testified that he was not informed of the trial court's ruling and thought that "they" were "in a holding pattern" until they heard back from the trial

7

A review of the record makes clear that once Appellant learned that sex-offender treatment would require him to discuss and admit to the sex offenses of which he had been found not guilty and that were the subject of an expunction order, he objected to his treatment provider, he filed a motion to modify the terms of treatment on that basis, the issue was raised and discussed during multiple conferences with the trial court, the trial court attempted to clarify what could be discussed during a conference, and after Appellant and Strain disagreed on what the trial court had concluded could be discussed during treatment, both Appellant's attorneys and the probation department talked to the trial court about the issue again. *See* Tex. R. App. P. 33.1(a)(1) (requiring, as a prerequisite to appellate review, that "the complaint was made to the trial court by a timely request, objection, or motion"). The trial court and all parties involved were well aware of the issue, having had several prior conferences on it. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) ("The two main purposes of requiring a specific objection are to inform the trial judge of the basis of the

court. He testified that during every meeting he had with his community-supervision officer after his February meeting with Strain until the State filed its petition to proceed to adjudication in October, his community-supervision officer said that they were waiting to hear from the trial court on that issue.

Appellant's community-supervision officer testified that she made clear to Appellant that "he would still be held accountable for attending" sex offender treatment. Although the community-supervision officer offered other treatment providers, Appellant declined, stating, "Until we get information on the offense, we're going to have the same issue."

objection so that he has an opportunity to rule on it and to allow opposing counsel to remedy the error."). After being briefed on the issue, the trial court ruled, in effect, that Appellant would still be required to attend sex offender treatment. *See* Tex. R. App. P. 33.1(a)(2)(A) (requiring, for preservation purposes, that the trial court "ruled on the request, objection, or motion, either expressly or implicitly"). I would hold that Appellant complied with the preservation requisites of rule 33.1(a) by continuously objecting to the requirement that he admit and discuss sex offenses that he was found not guilty of committing and that had been expunged as soon as he learned of this requirement; the trial court and the State were aware of Appellant's complaint and had even addressed and attempted to resolve it multiple times, and the trial court ultimately ruled on the issue. *Accord Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) ("The standards of procedural default . . . are not to be implemented by splitting hairs in the appellate courts.").

Consequently, for the above reasons, I would hold that Appellant preserved for this court's review his complaint that the trial court abused its discretion by revoking his community supervision for failure to attend and complete a sex-offender treatment program that required him to discuss and admit to sex offenses of which he had been found not guilty and that had been expunged, and I would reach the merits of this argument. Because the majority does not, I respectfully dissent.

9

/s/ Sue Walker
SUE WALKER
JUSTICE

PUBLISH

GARDNER, J. joins.

DELIVERED:  March 13, 2014