# NO. 12-13-00127-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *HAROLD JAYLYNN COUCH,* *APPELLANT* | § | *APPEAL FROM THE 8TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *RAINS COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Harold Jaylynn Couch appeals his conviction for indecency with a child. He raises nine issues on appeal. We affirm.

## BACKGROUND

On June 15, 2011, a Rains County grand jury returned an indictment against Appellant for the offense of indecency with a child, M.L., alleged to have occurred on or about September 7, 2010.[1] Appellant pleaded "not guilty" to the offense, and his first trial resulted in a hung jury. In his second trial, the jury found Appellant guilty and assessed punishment at twelve years of imprisonment. This appeal followed.

## PRESERVATION OF ERROR

Appellant raises nine issues on appeal relating to prosecutorial misconduct, the admission of evidence, the denial of the right to confrontation, and the trial court's rulings on his objections. The State contends that Appellant failed to preserve error on several of these issues.

---

[1] Subsequently, the indictment was amended to change the date to September 6, 2010.

**Applicable Law**

Challenges to the propriety of trial court rulings must be preserved for appeal. *Moore v. State*, 371 S.W.3d 221, 225 (Tex. Crim. App. 2012). Failure to present a timely and specific request, objection, or motion to the trial court for a ruling results in waiver or forfeiture of the right to present the claim on appeal. *See* Tex. R. App. P. 33.1; *Mendez v. State*, 138 S.W.3d 334, 341–42 (Tex. Crim. App. 2004). The requirement that complaints be raised in the trial court (1) ensures that the trial court will have an opportunity to prevent or correct errors, thereby eliminating the need for a costly and time-consuming appeal and retrial; (2) guarantees that opposing counsel will have a fair opportunity to respond to complaints; and (3) promotes the orderly and effective presentation of the case to the trier of fact. *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006); *Stinecipher v. State*, 438 S.W.3d 155, 159 (Tex. App.—Tyler 2014, no pet.).

A complaint is timely if it is made "as soon as the ground of objection becomes apparent." *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011) (citations omitted). A party need not "spout magic words" or recite a specific statute to make a valid objection. *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009).

> Straightforward communication in plain English will always suffice. . . . [A]ll a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.

*Id.* (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) (en banc)). In determining whether an objection is sufficiently clear to provide an opportunity to correct the purported error, the appellate court should consider the context in which the complaint was made and the parties' understanding of the complaint at the time. *Ford*, 305 S.W.3d at 533. An issue on appeal must comport with the objection made at trial, i.e., an objection stating one legal basis may not be used to support a different legal theory on appeal. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). Thus, when an appellant's trial objection does not comport with his argument on appeal, he has forfeited his right to raise the issue. *See Clark*, 365 S.W.3d at 339; *Goff v. State*, 931 S.W.2d 537, 551 (Tex. Crim. App. 1996).

2

*Appellant's First Issue*

In his first issue, Appellant contends that he was "denied due process of law as a result of prosecutorial misconduct," and states "[e]xamples are set out below." Appellant's examples are found throughout his brief and relate to the prosecution's closing argument and cross examination of defense witnesses.

Prosecutorial misconduct rises to a due process violation when it is so significant that it deprives a defendant of a fair trial. *Clark*, 365 S.W.3d at 338. To preserve error in cases of prosecutorial misconduct, the defendant must (1) object on specific grounds, (2) request an instruction that the jury disregard the comment, and (3) move for a mistrial. *Penry v. State*, 903 S.W.2d 715, 764 (Tex. Crim. App. 1995) (per curiam); *see also Johnson v. State*, 432 S.W.3d 552, 561–62 (Tex. App.—Texarkana 2014, pet. denied) (holding that appellant was required to preserve any perceived error regarding prosecutorial misconduct by making timely and specific objection on that basis).

i. Appellant's Examples of Misconduct

Appellant provides four examples that he characterizes as prosecutorial misconduct. His first example relates to the prosecutor's closing argument in which he stated, "In fact, did you hear the defendant tell you why she would say such a thing? No. He didn't even try. Because maybe he does have an eighth-grade education, and maybe he's not smart." Defense counsel objected to this statement, approached the bench, and argued that it was improper because it was "shifting the burden of proof to my client." The prosecutor responded, "We're not shifting the burden. We accept the burden of proof." He further stated, "I think I can talk about motive. . . . That's how you determine somebody's credibility." At the conclusion of the bench conference, the trial court sustained the objection, instructed the jury to disregard the prosecutor's statement, and denied defense counsel's motion for mistrial.

Appellant's second example of alleged misconduct relates to another statement the prosecutor made during closing argument. But defense counsel did not object to this statement.

Appellant's third example of alleged misconduct relates to the prosecutor's cross examination about photographs that the trial court had ruled inadmissible. Again, defense counsel did not object to the prosecutor's conduct.

Appellant's last example of alleged misconduct relates to the prosecutor's cross examination of Appellant about his volunteer activities at M.L.'s school. Specifically, the

prosecutor asked, "Would it surprise you to know that [M.L.'s teacher] says you never volunteered there?" Defense counsel objected to the prosecutor's question on the grounds of "testifying" and "relevance." The prosecutor responded as follows:

> Judge, he's brought this into question. He's testified that he volunteered at this school, and I've got a right to ask him, would it surprise you to know that the teacher of [M.L.] says you never volunteered.

The trial court overruled defense counsel's objection.

### ii. Context and Understanding of Appellant's Complaints

We note that Appellant cites ***Rogers v. State***, 725 S.W.2d 350 (Tex. App.—Houston [1st Dist.] 1987, no pet.), as support for finding prosecutorial misconduct in this case. The ***Rogers*** holding created an exception to the general rule of error preservation when the "*entire record*" shows that a prosecutor's conduct creates such impermissible prejudice that it had a "probable cumulative effect upon the jury. ***Rogers v. State***, 725 S.W.2d 350, 360–61 (Tex. App.—Houston [1st Dist.] 1987, no pet.). Having reviewed the entire record and the alleged errors, we cannot conclude that the prosecutor's conduct permeated the trial with such "impermissible prejudice" as to have had a cumulative effect of denying Appellant a fair trial. *See **Rogers***, 725 S.W.2d at 360–61.

Defense counsel objected to only two of the four examples mentioned in Appellant's brief. Thus, Appellant has forfeited his right to complain on appeal about the alleged error in his second and third examples of alleged prosecutorial misconduct. *See* TEX. R. APP. P. 33.1; ***Mendez***, 138 S.W.3d at 342. In the other two examples, defense counsel objected but did not raise prosecutorial misconduct or due process as a ground for his objection.

The trial court's and prosecutor's responses to those objections do not indicate that they understood counsel's objections to relate to prosecutorial misconduct or due process. *See **Clark***, 365 S.W.3d at 339; ***Ford***, 305 S.W.3d at 533. Therefore, Appellant's argument does not comport with his objections at trial. Consequently, he has forfeited his right to complain about prosecutorial misconduct on appeal. *See* TEX. R. APP. P. 33.1; ***Clark***, 365 S.W.3d at 339. Accordingly, we overrule Appellant's first issue.

*Appellant's Second Issue*

In his second issue, Appellant argues that the trial court abused its discretion "when it permitted the [S]tate's expert to give [an] opinion on the veracity of the complaining witness."

4

Defense counsel made no objection to the expert's opinion relating to M.L.'s credibility. Thus, Appellant has forfeited his right to raise this issue on appeal. *See* TEX. R. APP. P. 33.1; *Mendez*, 138 S.W.3d at 342. Accordingly, we overrule Appellant's second issue.

### *Appellant's Third Issue*

In his third issue, Appellant contends that the trial court "erred in limiting the defense cross examination. . . ." The Sixth Amendment guarantees the right of an accused to be confronted with the witnesses against him. U.S. CONST. amend. VI; *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000). This right to confrontation includes the right of cross examination, but a trial court may impose reasonable limits to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence. *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App. 1997). When an accused desires to elicit certain, specific responses from a State's witness but is precluded from doing so by the trial judge, the requirements of Texas Rule of Evidence 103(a)(2) must be satisfied.[2] *See Holmes v. State*, 323 S.W.3d 163, 170–71 (Tex. Crim. App. 2009) (clarifying holding in *Virts v. State*, 739 S.W.2d 25 (Tex. Crim. App. 1987) that established preservation requirements for limitation of cross examination regarding matters requiring specific responses to impeach witness testimony and matters about general subjects affecting witness credibility)).

When a trial court excludes evidence, Rule 103(a)(2) requires the complaining party to make an "offer of proof" that sets forth the substance of the proffered evidence to preserve error for appeal. *See* TEX. R. EVID. 103; *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009). The primary purpose of an offer of proof is to enable the appellate court to determine whether the exclusion was erroneous and harmful. *Id.* at 890. A secondary purpose is to permit the trial judge to reconsider his ruling in light of the actual evidence. *Id.*

The offer of proof may consist of a concise statement by counsel, or be in question and answer form. *Id.* at 889. If the offer is in the form of a statement, it "must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the

---

[2] Rule 103(a)(2) states as follows:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked.

TEX. R. EVID. 103(a)(2).

relevance is apparent, so that the court can determine whether the evidence is relevant and admissible." **Id.** at 890 (quoting **Warner v. State**, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998) (en banc)).

### i. Testimony of M.L.'s Mother

The events involving Appellant's conduct with M.L. occurred during a Labor Day gathering in Rains County. On direct examination, M.L.'s mother, Janice, testified that her older daughter, Jerrie, planned to go to the gathering and Jerrie's daughter, Cristine, and grandson, E.S., were also going with Jerrie.[3] M.L. was asked to go with them, and Janice reluctantly agreed that M.L. could go. Janice testified that she did not want M.L. to go to Rains County, expressed her concern to Jerrie, and told Jerrie to "watch the children."

On cross examination, Janice testified that she knew M.L.'s biological father, Michael, was already at the gathering in Rains County, but she was nevertheless concerned for M.L. Pursuant to the State's motion in limine, defense counsel approached the bench and the following discourse took place:

> Defense counsel: It's my understanding—and I'm—my understanding is [Janice] has two sons, and they're both convicted sex offenders. And I would like—I'm considering I may go into that, or it may come out because she's expressed concern about why they're there. I—at this point, they're left the impression that they're concerned because this group's down there. And—
>
> Trial court: I haven't got any impression. Just the fact that she's—just the fact that she was away—my wife is concerned when kids go—
>
> Defense counsel: Well, that was her testimony, is that she was concerned that her—and didn't want her daughter to go.
>
> Prosecutor: I think it could be any type of concern because that's—just the drive. But if you go into that, I don't think you're going to like what you get. The only thing you can ask now is why is she concerned, and if you do that—
>
> Defense counsel: Well, no. Now, there's a motion in limine in place that I can't ask about anyone who doesn't have direct evidence or knowledge of this. His mother has direct knowledge of Michael being a registered sex offender and—
>
> Trial court: And you want to ask it for what purpose?
>
> Defense counsel: To show that there are many reasons for her being concerned about the child going down there.
>
> Trial court: Okay. And what does that get you? What does that get you?

---

[3] M.L.'s biological grandmother (Janice) adopted M.L. and is now her legal parent.

> Prosecutor: I tell you what it's going to get you, [counselor], is, it's going to get you she was concerned about him because of what he's done in the past to her—her other daughter, her granddaughter, and they all know to watch out for him because of what he did when she was five years old. That's what it's going to get you. That's what I'm saying. She's not going to say she was concerned about her own son. For crying out loud, he's living with her.
>
> Defense counsel: Okay.
>
> Trial court: Well, I'm going to deny your request to ask that question.

Following this discussion, defense counsel established that M.L. has been attending counseling since the age of seven. No other objections were made during Janice's testimony.

On appeal, Appellant argues that the trial court's ruling "refused to let the defense delve into the fact [that Janice] had other reasons to be concerned[.]" But the above-quoted discourse does not show that Janice would have testified that her knowledge that Michael was a registered sex offender was the reason she was concerned about M.L. going to Rains County.

The record does not set forth the substance of the testimony that Appellant complains he was prohibited from eliciting at trial. *See* TEX. R. EVID. 103. Without more, we are unable to determine whether the trial court's denial of defense counsel's request to question Janice about Michael's sex offender status was erroneous and harmful. *Mays*, 285 S.W.3d at 890–91. Appellant has failed to preserve this alleged error for appeal. *See* TEX. R. APP. P. 33.1; TEX. R. EVID. 103. Accordingly, we overrule Appellant's third issue.

### Appellant's Fourth Issue

In his fourth issue, Appellant contends that the trial court "erred in overruling hearsay objection." Appellant follows this statement with a section explaining the law of hearsay. The record shows that the trial court sustained the hearsay objection Appellant refers to in his brief. Therefore, the alleged error he complains of did not occur. Accordingly, we overrule Appellant's fourth issue.

### Appellant's Sixth Issue

In his sixth issue, Appellant argues the prosecutor injected his personal opinion of M.L.'s truthfulness by stating "she is telling the truth" in his closing argument. Defense counsel did not object to the prosecutor's statement. Thus, Appellant has forfeited his right to raise this issue on appeal. *See* TEX. R. APP. P. 33.1; *Mendez*, 138 S.W.3d at 342. Accordingly, we overrule Appellant's sixth issue.

7

*Appellant's Seventh Issue*

In his seventh issue, Appellant argues that the trial court "erred in admitting photographs and testimony concerning a collateral matter." When the prosecutor proffered the photographs, defense counsel objected on relevance grounds.

Prosecutor: He's testified about his house—it being his house, but yet it's not really his house. He's now straightened that up. It's his daddy's house. First off, he said his daddy was living with him, and now it's not really that way.

And I don't think he can even explain—the truth is, [the security cameras] are not there for cutting down trees. The truth is because they're spying on the neighbors, is what the truth is, and I've got witnesses to come and testify about these and what they've been doing.

Defense counsel: That has nothing to do with what we're here for today. Nothing.

Trial court: I suppose that could go to impeachment. Is that your—

Prosecutor: That's what I'm getting at, Judge.

Trial court: Impeach credibility?

Prosecutor: Yes, his prior testimony—the impression he gave was that he has this house in Dallas; he sold his house in Kaufman, he's got this house in Dallas, he lives there. He doesn't live down there. I think the testimony is actually going to be that he does not live there. We've got two witnesses that's going to testify he does not.

. . . .

Trial court: All right. Let the record reflect that we're outside the presence of the jury. I mean, I understand impeaching credibility. For that, I understand it. But the—

Prosecutor: I'm not going much longer with this, Judge. I've got two witnesses back there that are probably going to testify that most everything he just said is a lie. . . .

Defense counsel: Then what does it matter? I mean, how does that tend to prove that there was an offense that occurred on September 6, 2010, that—what does this tend to prove that he did something on this date?

Prosecutor: It goes to his credibility. Everything he said about that is lies. Everything he's saying about this is lies.

Defense counsel: [I]t's totally irrelevant. The witnesses that he plans to call were in a civil dispute—criminal dispute with another person in the family. Has nothing to do with this guy.

Trial court: It would not be admissible or relevant at all if [Appellant] had not taken the stand and put those issues before the court to talk about those things. I'll overrule the objection as to relevance.

On appeal, Appellant appears to argue that the probative value of the evidence was outweighed by the danger of unfair prejudice.[4]  Once a trial court has ruled that evidence is relevant, the opponent of the evidence must make a separate objection to raise unfair prejudice to preserve error.  ***Paschal v. State***, 35 S.W.3d 80, 82 (Tex. App.—Texarkana 2000, no pet.) (citing ***Bell v. State***, 938 S.W.2d 35, 49 (Tex. Crim. App. 1996)).  Defense counsel's sole basis for objecting to the admissibility of the photographs was relevance.  Because he failed to make a separate Rule 403 objection, he did not preserve error on this issue.  *See **id.***  Accordingly, we overrule Appellant's seventh issue.

### *Appellant's Eighth Issue*

In his eighth issue, Appellant complains of the prosecutor's continued questioning of a witness about evidence that was ruled inadmissible.  Defense counsel did not object to this conduct.  Thus, Appellant has forfeited his right to raise this issue on appeal.  *See* TEX. R. APP. P. 33.1; ***Mendez***, 138 S.W.3d at 342.  Accordingly, we overrule Appellant's eighth issue.

### *Appellant's Ninth Issue*

In his ninth issue, Appellant argues that the trial court erred by "overruling the objection allowing the prosecutor to testify permitting the prosecutor to cross examine the Defendant in an attempt to impeach. . . ."  During cross examination, the prosecutor questioned Appellant about his volunteer work at M.L.'s school, and asked Appellant, "Do you even remember [the teacher's] name?"  Appellant responded, "Names are my worst deal that there is."  The following discourse then took place:

> Prosecutor:  I bet—in fact, her name is [T.M.].  Would it surprise you to know that she says you never volunteered there?
>
> Defense counsel:  Objection, your Honor.
>
> Prosecutor:  I'm just asking—

---

[4] Appellant's brief states as follows:

> However, the reviewing court cannot simply conclude that the trial court conducted a balancing test and did not rule arbitrarily or capriciously. . . . *Instead*, we must look at the proponent's need for the evidence in addition to determining the relevance of the evidence, and whether the prejudice of this evidence outweighs its probative value. . . . The prosecutor felt he needed the nonsense in the cross examination on the absolutely collateral issues surrounding a dispute between neighbors an hour[']s drive away from the scene, but does that make it relevant and admissible as opposed to confusing and unduly prejudicial?

9

Defense counsel: He's testifying, and he's not asking the proper question. At this point, if she's available to testify, she should come to court.

Trial court: What's the objection?

Defense counsel: Well, number one is, he's testifying. He's not a witness. Number two, it's relevance. I don't see what any of this has to do about September 6 of 2010.

Prosecutor: Judge, he's brought this into question. He's testified that he volunteered at this school, and I've got a right to ask him, would it surprise you to know that the teacher of [M.L.] says you never volunteered.

Trial court: Overruled.

Defense counsel's explanation of "testifying" and "relevance" to the prosecutor's cross examination was not sufficiently specific to let the trial judge know what he wanted and why he thought he was entitled to have the trial court sustain his objection. *See* TEX. R. APP. P. 33.1; *Ford*, 305 S.W.3d at 533. The trial court's and prosecutor's responses show that they did not understand Appellant's objection to be, as he now argues on appeal, that the question was improper because it assumed facts that were not in evidence. *See* TEX R. APP. P. 33.1; *Clark*, 365 S.W.3d at 339. Because Appellant's argument does not comport with his objections at trial, he has forfeited his right to raise this issue on appeal. *See* TEX. R. APP. P. 33.1; *Clark*, 365 S.W.3d at 339. Accordingly, we overrule Appellant's ninth issue.

**DENIAL OF MISTRIAL**

In his fifth issue, Appellant argues that the trial court erred by failing to grant a mistrial when the prosecutor attempted to shift the burden of proof during his final argument. When a trial court sustains an objection and instructs the jury to disregard, but denies a defendant's motion for mistrial, the issue is whether the trial court erred in denying the mistrial. *See Barrera v. State*, 321 S.W.3d 137, 156 (Tex. App.—San Antonio 2010, pet. denied) (citing *Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004).

**Standard of Review and Applicable Law**

A trial court's denial of a mistrial is reviewed for abuse of discretion. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). We view the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Id.*

In evaluating whether the trial court abused its discretion, we balance three factors: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *See Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007) (*Archie I*); *Searcy v. State*, 231 S.W.3d 539, 548 (Tex. App.—Texarkana 2007, pet. ref'd). In most cases, an instruction to disregard will cure the alleged harm. *See Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).

**The Prosecutor's Closing Argument**

The objectionable portion of the prosecutor's closing argument is as follows:

> How do you determine the truth? We talked about it. Look at a party's motive, their bias, what they have to gain or lose, and their relationship to the parties. Let's compare [M.L.] and the defendant. What about a motive to testify falsely? If the defendant tells the truth, he's going to prison. He's getting convicted. [M.L.], she has no motive whatsoever.
>
> In fact, did you hear the defendant tell you why she would say such a thing? No. He didn't even try. Because maybe he does have an eighth-grade education, and maybe he's not smart.

Defense counsel objected, contending that the argument was shifting the burden of proof to Appellant. The trial court sustained the objection and gave the following instruction:

> Ladies and gentlemen, I'm going to ask you to disregard—just one second. Let me go back and look—the statement, "In fact, did you hear the defendant tell you why she would say such a thing? No. He didn't even try."
>
> I've sustained the defendant's objection that that would suggest that the burden shift[ed] and, of course, that's not the law. I'll remind you to—that you are instructed by the law as it is in the jury charge, and so you are instructed to disregard that statement and consider it for no purpose at all.

Thereafter, defense counsel made an oral motion for mistrial, which the trial court denied. The prosecutor resumed his argument by stating, "[W]e are not trying to shift the burden of proof in this case. As I said in voir dire, we accept it. It's a high burden."

**Discussion**

We first note that it is generally permissible for the State to comment on a defendant's failure to present favorable evidence, and such comments do not shift the burden of proof. *See Orellana v. State*, 381 S.W.3d 645, 655 (Tex. App.—San Antonio 2012, pet. ref'd); *see also*

11

*Larry v. State*, No. 12-13-00072-CR, 2014 WL 2521593, at *2 (Tex. App.—Tyler May 30, 2014, no pet.) (mem. op., not designated for publication) (identifying four categories of permissible argument as summation of evidence, reasonable deduction from evidence, answer to opposing counsel's argument, and plea for law enforcement). The prosecutor's argument and defense counsel's objection in this case are similar to those before the Fort Worth court of appeals in *Harris v. State*, 122 S.W.3d 871 (Tex. App.—Fort Worth 2003, pet. ref'd).

In *Harris*, the defendant argued that the prosecutor shifted the burden of proof in his closing argument by stating

> [l]ook at the motive. Do [the girls] have any motive whatsoever to come in here and tell you anything but the truth? No. They're not gaining anything by coming here and talking about this. Absolutely the most embarrassing thing has happened in their life or will happen in their life, and they have to come talk about it. Do they have any motive? No.
>
> *The defense has subpoena power, the power to call any witness to come testify. Anyone to say anything on how it might be possible for these girls to have some sort of motive to come in here and lie.*

*Id.* at 884. The court of appeals held that the prosecutor's comments about the defendant's subpoena power were proper if they referred to the defendant's failure to produce evidence from other sources. *See id.* (citing *Livingston v. State*, 739 S.W.2d 311, 338 (Tex. Crim. App. 1987), *cert. denied*, 487 U.S. 1210, 108 S. Ct. 2858, 101 L. Ed. 2d 895 (1988)). The court also held that comments relating to an accused's failure to produce testimony is improper "only if it points to the absence of evidence that could be supplied only by the defendant's testimony." *Id.* (citing *Fuentes v. State*, 991 S.W.2d 267, 275 (Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 1026, 120 S. Ct. 541, 145 L. Ed. 2d 420 (1999)). The court concluded that the prosecutor's comment was "a summation of the evidence presented at trial, coupled with an argument that the jury should not be concerned with evidence not presented at trial—any motive for the girls to lie about the assault." *Id.* at 884-85.

1. *Severity of the Misconduct*

Here, Appellant testified that he did not engage in any inappropriate conduct with M.L. Using *Harris* as our guide, we hold that the prosecutor's complained of argument was likely not improper because the State may comment on a defendant's failure to produce favorable evidence. *See id.* at 884; *see also Ford v. State*, 444 S.W.3d 171, 197-98 (Tex. App.—San Antonio Aug. 20, 2014, pet. filed) (holding argument "reasonable deduction from the evidence"

12

where prosecutor argued "If not him, who? I mean, they're going to tell you that's shifting the burden of proof. . . [.] Who? They've put on a case. They've called witnesses. They—they have certainly cross[]examined. Who?"). But even if the argument was improper, the magnitude of its prejudicial effect was slight. *See Orellana*, 381 S.W.3d at 656 (holding that even if question of whether defendant could request blood testing was improper burden shifting, its prejudicial effect was slight). This factor weighs in favor of the trial court's ruling.

### 2. *Curative Measures*

The law generally presumes that instructions to disregard and other cautionary instructions will be duly obeyed by the jury. *Archie v. State*, 340 S.W.3d 734, 741 (Tex. Crim. App. 2011) (*Archie II*). Only offensive or flagrant error warrants reversal when there has been an instruction to disregard. *See Wesbrook*, 29 S.W.3d at 116.

Here, the trial court sustained defense counsel's objection and immediately instructed the jury to disregard the prosecutor's comment. In addition to his oral instruction, the court's written charge instructed the jury that

> [t]he prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.
>
> . . . .
>
> The burden of proof in all criminal cases rest[s] upon the State throughout the trial and never shifts to the defendant.

These measures, when viewed in light of the prosecutor's confirmation that the State bore the burden of proof, were sufficient to cure any harm or prejudice that might have occurred. *See Archie I*, 221 S.W.3d at 700; *see also Wesbrook*, 29 S.W.3d at 116 (prosecutor's comment not so flagrant that instruction to disregard was ineffective). This factor weighs in favor of the trial court's ruling.

### 3. *Certainty of Conviction*

The third balancing factor requires us to consider the strength of the evidence supporting Appellant's conviction absent the alleged misconduct. *See Archie I*, 221 S.W.3d at 700. Accordingly, we will examine the evidence presented at trial.

The State presented testimony from several witnesses. The State first called the victim, M.L., who was ten years old at the time of trial. M.L. testified that on Labor Day weekend, she

rode in a van with some family members to an outdoor gathering in Rains County. Once they arrived, M.L. and her cousin E.S. played tag, and "ran around." M.L. testified that Appellant shot fireworks and showed them an electric wheelchair that they could play with. M.L. and E.S. rode in the wheelchair "[i]n between the tent," "a little bit behind the tent so we could turn." M.L. testified that they could ride the wheelchair only in certain areas behind the tent because there were "a bunch of twigs and bushes."

At some point, M.L. and E.L. were behind the tent, alone with Appellant. Appellant told E.L. to go away, and after E.L. was gone, Appellant asked M.L. "if he could kiss me." M.L. told Appellant he could kiss her on the cheek, but explained that "then he started trying to kiss me on my lips, and then he squeezed my butt." M.L. testified that she was scared and pushed Appellant away from her. After that, Appellant told M.L. to unzip his pants and M.L. "left him and went to the grownups." M.L. testified that she did not leave the tented area again until it was time to go home.

M.L. testified that when it was time to leave, she grabbed her aunt's cooler and carried it to the back of their van. At this time, it was dark. As M.L. was trying to put the cooler in the van, Appellant walked up to M.L., said "I was looking for you," put his hand inside M.L.'s shirt, and "squeezed my boob." Janice, M.L.'s mother, testified that the next morning, M.L. told her "Appellant tried to pinch titty and kiss[ed] me."

Jerrie, M.L.'s aunt, was one of the family members with whom M.L. traveled to Rains County. Jerrie testified that as she was preparing to leave, she heard "hollering and carrying on." She walked from the tent area and saw Appellant on the ground with Michael (M.L.'s biological father) on top of him. Jerrie did not see Appellant touch M.L., but testified that she heard Appellant say, "I'm sorry. I didn't mean to do it. I didn't know what I was doing."

Jerrie's daughter, Cristine, also traveled to Rains County for the outdoor gathering. She testified that she thought it was unusual that Appellant "kept wanting to play with the children" and "it was like he was always with the children." Eventually, Cristine told M.L. and E.S. to sit with her in the tented area because "it was getting to where it was uncomfortable the way that I—you know, the way that [Appellant] was looking to me was getting to be uncomfortable."

Eventually, Cristine told everyone that it was time for them to leave. She testified that M.L. wanted to stay, and when Cristine told her no, M.L. "got mad" and "ran off" to the car. According to Cristine, Appellant followed M.L. to the car. Thereafter, M.L.'s father walked to

the van, and Cristine heard "chaotic screaming." She testified that she heard M.L.'s father saying, "I can't believe you just touched my daughter in front of me like that." Cristine then heard Appellant say repeatedly, "I'm sorry. I didn't know what I was doing."

The State presented testimony from an expert witness, Kathy Smedley, to testify about the behavioral signs, symptoms, and effects that occur when a person has been sexually abused. Smedley explained the grooming process and testified that after reviewing M.L.'s forensic interview, she saw things that were consistent with the grooming process.

Appellant denied ever being alone with M.L., and testified that the only time he touched M.L. that night was when he put his hand on her shoulder, leaned over, and asked her how she liked her new school. Appellant testified that he did not go behind the tents that night, and said that the motorized wheelchair could not go behind the tents because briars and a refrigerator were blocking its path. Contrary to Jerrie's and Cristine's testimony, Appellant testified that he did not make any statement or say anything after Michael had kicked him to the ground. Appellant also testified that he was wearing coveralls that night, and that they had a "button fl[y]."

Appellant called several other witnesses who had attended the outdoor gathering that night. Appellant's brother, Robert, testified that he did not hear anyone screaming that night. Appellant's cousin, Gary, testified that M.L. and E.S. never left his sight and that the children stopped playing with the wheelchair after their aunt told them to stop. He testified that the children were "pretty happy," did not seem to be upset, and that he did not see any communication or contact between Appellant and M.L.

Appellant's other cousin, Tommy (Gary's brother), testified that M.L. and her cousin were playful and their attitudes did not change that night. He testified that Appellant played with M.L. and her cousin, and related that he did not remember the children ever being out of sight. Tommy did not hear what, if anything, was said when Appellant and M.L.'s father were fighting on the ground, but testified that he heard the girlfriend of M.L.'s father tell him that Appellant touched M.L.

Although Appellant presented evidence in his case in chief, it is likely that Appellant would have been convicted even if the prosecutor had not made the comment at issue. *See id.* This factor weighs in favor of the trial court's ruling.

15

## Conclusion

After balancing the severity of the prosecutor's alleged misconduct, the curative measures, and the certainty of Appellant's conviction, we conclude that the trial court did not abuse its discretion in denying Appellant's motion for mistrial. *See Ocon*, 284 S.W.3d at 884; *Archie II*, 340 S.W.3d at 742; *Archie I*, 221 S.W.3d at 700. Accordingly, we overrule Appellant's fifth issue.

## DISPOSITION

Having overruled Appellant's nine issues, we *affirm* the judgment of the trial court.

BRIAN HOYLE
Justice

Opinion delivered December 17, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 17, 2014**

**NO. 12-13-00127-CR**

**HAROLD JAYLYNN COUCH,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 8th District Court

of Rains County, Texas (Tr.Ct.No. 5172)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*