

# IN THE COURT OF CRIMINAL APPEALS
## OF TEXAS

### NO. PD-1189-15

**MAYRA FLORES, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

YEARY, J., filed a dissenting opinion in which KELLER, P.J., and KEASLER, J., joined.

### DISSENTING OPINION

Suppose an officer begins to interview a suspect, but shortly into the interview he realizes that the batteries in his recording device have died. He immediately ceases the interview, replaces the batteries, cautions the suspect again in compliance with both *Miranda* and Article 38.22 of the Code of Criminal Procedure,[1] and re-starts the interview from scratch. Suppose the suspect then repeats whatever he had said before, with no material

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966); TEX. CODE CRIM. PROC. art. 38.22.

variation, and then adds to it. Is the entire interview—including everything that came after the officer replaced the batteries and re-warned the suspect—inadmissible because the first part was not fully recorded, however inadvertently, as required by Article 38.22? That seems to be what the plurality holds today.[2] After all, the recorded interview that the State ultimately offers into evidence in my hypothetical is not—indeed, cannot possibly be—complete, and therefore "accurate," in the sense that the plurality adopts today. *See* Plurality Opinion at 18 (the "absence" of part of the recordings made them "inaccurate"). I suspect that this is not what the Legislature had in mind when it enacted Article 38.22.[3]

More fundamentally, we ought not to even reach that issue in this case. It was not

---

[2] As I understand it, the plurality essentially holds that the two discretely recorded interviews in this case were two parts of a single interview for purposes of Article 38.22, Section 3(a)(3). Plurality Opinion at 12-13. *See* TEX. CODE CRIM. PROC. art. 38.22 § 3(a)(3) (making admission of the recorded statement of an accused contingent upon a showing that, among other things, "the recording device was capable of making an accurate recording, . . . and the recording is accurate and has not been altered"). For this proposition, the plurality relies on our opinion in *Bible v. State*, 162 S.W.3d 234 (Tex. Crim. App. 2005). There we held that two interviews, conducted some three hours apart, were "part of a single interview for the purpose of Article 38.22 and *Miranda*." *Id*. at 242. The issue in that case was whether the separate interviews were discrete parts of "a single interview" for purposes of the efficacy of the prophylactic warnings that both Article 38.22 and *Miranda* require. We did not address the question of whether two such discrete interviews were "a single interview" for purposes of deciding whether one or the other was "accurate" or "altered" in contemplation of Section 3(a)(3) of Article 38.22. We also did not address whether, if the recording device was not functional with respect to one discrete interview, but later functioned properly for the second, the second would nevertheless be inadmissible. In any event, Section 3(a)(3) of Article 38.22 does not expressly require completeness of a recording as a condition of admissibility. *See* note 20, *post*.

[3] It is not hard to imagine other hypothetically "incomplete" statements that might run afoul of the plurality's holding today. Suppose a statement is taken, and the recording device is then turned off. Officers continue to speak casually with the suspect, only incidentally referencing the subject of the statement, but generating no new information. Would the plurality deem the recorded statement to be "inaccurate" because "incomplete" under this scenario? Again, I cannot imagine the Legislature would have intended such a result when it passed Article 38.22.

cleanly presented on appeal or on discretionary review and, in any event, was almost certainly not preserved in the trial court. We ought to simply improvidently grant this petition for discretionary review. Because the plurality does not, I cannot join its opinion.

## FACTS AND PROCEDURAL POSTURE

In the course of a domestic dispute, Appellant stabbed her husband with a kitchen knife. He bled out, and the State charged Appellant with murder. The case went to jury trial, at which Appellant relied on a self-defense theory.

When she was arrested, Appellant had given the Sheriff's Office an oral statement in which she acknowledged that she had stabbed her husband. The recording of the statement admitted at trial was truncated; it did not cover the final twenty minutes of Appellant's custodial interrogation. On the recording, Appellant described her husband's abusive relationship with her, mentioning that he often hit her and sometimes kicked her. Appellant told the interrogators that on the night of the stabbing, her husband was hitting and kicking her harder than ever before, causing injuries to her leg, ankle, ribs, and head. She described a facial expression he made that she claimed conveyed a threat: "The face he did, it was just like, 'I'm going to kill you, bitch.'" The State entered and published the recording during its case-in-chief.

The same day the State introduced the recording and rested its case-in-chief, Appellant testified in her own defense. Her account from the witness stand included additional details that made the threat of death or serious bodily injury more explicit. According to Appellant's

testimony, her husband had also *said*, "I'm going to fucking kill you, bitch!" When the State asked her why she had not told the police this fact, she answered that she *had* told the police about the verbal threat during the missing part of the interrogation. The State emphasized the discrepancy between Appellant's testimony and the recording in closing argument, arguing that Appellant had fabricated a sympathetic story for trial. Rejecting Appellant's claim of self defense, the jury ultimately convicted her.

Prior to trial, Appellant apparently challenged the admissibility of her recorded oral statement in a motion to suppress, but she did not seek a pre-trial hearing on that motion. The recording's potential infirmities were not brought to the trial court's attention until, during the State's case-in-chief, the State itself proffered the recording and argued that it was admissible under Article 38.22.[4] During a hearing outside the presence of the jury, Appellant urged the trial court to exclude the recording, arguing that there was "a Rose Mary Woods

---

[4] The clerk's record does not contain a motion to suppress, and the reporter's record does not contain a transcript of any pre-trial hearing on a motion to suppress. The record therefore fails to reveal the legal basis upon which Appellant may have challenged her recorded statement. Mid-trial, however, after some off-the-record discussion, the trial court asked the prosecutor, "Where are you reading in the Code?" The prosecutor directed the trial court's attention to Article 38.21 of the Code of Criminal Procedure, a one-sentence article that permits a freely-and-voluntarily-given statement to be admitted "under the rules hereafter prescribed[,]" including Article 38.22. TEX. CODE CRIM. PROC. art. 38.21. The prosecutor then announced on the record that

> before the start of trial, the defense had put in a motion to suppress the statement from the defendant. It's my intention with the next—whatchamacallit—the next witness to introduce the defendant's statement. So I think at this point in time the defense would have a motion to have that suppressed.

The motion to suppress was thus brought to the attention of the trial court. Defense counsel then argued that the statement should be excluded. *See* text, *post*, and Plurality Opinion at 4-5. Neither party presented any evidence bearing on the admissibility of the statement at this juncture.

problem," referring to Richard Nixon's secretary who claimed responsibility for erasing the infamous eighteen missing minutes of audio from the so-called Watergate tapes. Appellant explained her analogy:

> So, we have a section or segment of [the] statement that the jury will not hear because, either advertent or inadvertent, it was destroyed or is missing. So what would happen is if you offer the statement, you would only be offering part of the statement. . . . As a matter of fact[,] there may be even more exculpatory evidence on the missing part of the statement. And quite frankly, we're concerned that it was intentionally removed just to create the impression that is non-favorable to the defendant.

Appellant thus raised concerns that the recording did not accurately represent the interrogation (because it was missing a part of the interrogation that was favorable to her), and that the recording must have been altered (because the missing part may have been intentionally redacted). But she did not expressly invoke Article 38.22. If anything, Appellant's counsel seemed to complain that, in the absence of the balance of the recording, Appellant would be unable to successfully invoke Rule 107 of the Texas Rules of Evidence, the so-called "Rule of Optional Completeness." TEX. R. EVID. 107.

The State responded that "at some point in time the video recorder shut down,[5] and that part of the statement has been lost, or not recorded, for lack of a better term." The State represented that the interrogating officer would testify, "I believe we continued to speak

---

[5] The prosecutor made it clear that the recorder only recorded audio of the interrogation when he first brought the issue to the trial court's attention. However, while arguing that the recording should be admitted, he frequently referred to it as a "video." Though defense counsel claimed to have "seen a videotape," the exhibit in question is a CD-R that contains a Windows Media Audio file. Inspection of the file's properties reveals that the "length" of the recording is approximately fifty-four minutes, but the file will not play past the thirty-sixth minute.

more, but the recording was so bad we just didn't start back up." Aware that all of the parties agreed that the interrogation had continued beyond the end of the recording, possibly because the recording device had malfunctioned, the trial court ruled against Appellant and announced that the statement was admissible.[6]

The jury then returned to the courtroom, and the State called Wayne Kuhlman, the detective who led the interrogation, to sponsor the recording. Kuhlman testified that he used a manually-operated "Olympus digital recorder" to record the conversation, and that he was familiar with how to operate the device. He had listened to the recording on the exhibit, and he testified that it "fairly and accurately" reflected his conversation with Appellant, but he did not testify that the recording was unaltered. When the State offered the recording, Appellant renewed her objection, and the trial court overruled it. The jury then heard the recording, which ends in the middle of one of Appellant's sentences. The State immediately asked Kuhlman to explain the abrupt ending. Kuhlman answered that the recording was not cut off on purpose. Contrary to the State's earlier representation at the bench, however, Kuhlman did not testify that the recorder shut down and "was so bad we just didn't start back

---

[6] Shortly after the trial court overruled Appellant's objection to the introduction of the recording, defense counsel apparently sought clarification, asking the trial court, "And the Court is denying my spoliation -- " The trial court responded, "Yes. Let's bring in the jury." "Spoliation" is, in the legal context, "[t]he intentional destruction, mutilation, alteration, or concealment of evidence, usu. a document." BLACK'S LAW DICTIONARY ABRIDGED at 1133 (7th ed. 2000). Black's goes on to observe that, "[i]f proved, spoliation may be used to establish that evidence was unfavorable to the party responsible." *Id*. It is therefore possible that Appellant really wanted to be able to argue to the jury that it should presume that the unrecorded aspects of her recorded statement would support her self defense theory of the case. But such a basis for objection does not rely on (and may, indeed, run counter to) an argument that her statement was inadmissible as a function of Article 38.22.

up again." Rather, Kuhlman explained that the truncation resulted from a file transfer error

that occurred after the interrogation concluded:

> It was a technical issue that we have over at the building that we office in . . . . There was a time period where we were transferring the files from, like, recorders to our automated recording system. And it would not copy. There was something in the wiring and it cut it off at—it didn't copy the end of the recording.

Though the term "automated recording system" suggests a system installed in interrogation

rooms with automatic recording capabilities, Kuhlman's testimony indicates that, with regard

to Appellant's statement, the system was used merely to store a copy of the recording.

Kuhlman further testified that the end of the recording "does not exist," suggesting that the

original file on the digital recorder has been erased. Appellant did not reiterate her objection

to the admission of her recorded statement upon hearing Kuhlman's explanation.[7]

## PROCEDURAL DEFAULT

The court of appeals affirmed Appellant's conviction in an unpublished opinion.

*Flores v. State*, No. 01-14-00579-CR, 2015 WL 4591707 (Tex. App.—Houston [1st Dist.]

July 30, 2015) (mem. op., not designated for publication). Because it affirmed, the court of

appeals did not have to address any issue of procedural default with respect to Appellant's

claim on appeal that admission of her recorded statement violated Article 38.22, Section

3(a)(3). An appellate court is not at liberty to reverse a case on a claim of trial error without

---

[7] The plurality notes the State's varying explanations for the incompleteness of the recordings. Plurality Opinion at 6-7. It seems clear enough to me that the prosecutor was merely speculating as to how the recorded statement may have been affected. Only Kuhlman provided testimony to explain the problem, and he did so under oath. I see no obvious basis to doubt his explanation.

first addressing any issue of preservation of error that may suggest itself from the record. *Ex parte Pete*, 517 S.W.3d 825, 833 (Tex. Crim. App. 2017). When an intermediate appellate court does reverse without addressing procedural default, "we may address the issue for the first time ourselves, on discretionary review." *Id*. When an appellate court *affirms* a conviction without reaching issues of procedural default, it may or may not be appropriate for us to address that question *sua sponte*, as the plurality does today. *See* Plurality Opinion at 9-10. The more appropriate response might be to remand the cause to the court of appeals to address that question in the first instance. *See McClintock v. State*, 444 S.W.3d 15, 20 (Tex. Crim. App. 2014) (when an appellate court fails to address an issue necessary to the resolution of a case, the proper disposition is to remand to that court unless "the proper disposition of [the] outstanding issue is clear").[8]

That this case requires this plurality to address error preservation in the first instance is a good reason not to get involved. In any event, it is far from clear to me that "Appellant's trial objection was adequate to make the trial judge aware of the basis for her objection," as the plurality concludes. Plurality Opinion at 10. There is no motion to suppress in the record to show that Appellant invoked Article 38.22, and neither the parties nor the trial court ever mentioned it. The legal basis for Appellant's complaint seems to have been something else

---

[8] The plurality ultimately remands the cause to the court of appeals to conduct a harm analysis. Plurality Opinion at 19. The plurality could just as readily instruct the court of appeals to conduct the error-preservation analysis on remand too.

entirely—either the denial of her right to optional completeness, or "spoliation."[9]

**ON APPEAL**

In a single point of error on appeal, Appellant contended that the trial court abused its discretion to admit the recording because "the electronic recording device malfunctioned and did not record about twenty minutes of the interrogation[.]" Appellant's Brief on Appeal at 1. For the first time on appeal, she expressly invoked Section 3(a)(3) of Article 38.22, which requires the State to show that "the recording device was capable of making an accurate recording," and that "the recording is accurate and has not been altered[.]" *Id*. at 11 (citing TEX. CODE CRIM. PROC. art. 38.22 § 3(a)(3)).[10] Nowhere in her brief, however, did Appellant argue precisely in what way the recorded oral statement failed to satisfy these requirements. She simply seems to have argued on appeal that a recording that fails to

---

[9] Similarly, in *Resendez v. State*, 306 S.W.3d 308, 309 (Tex. Crim. App. 2009), the appellant challenged his un-warned custodial statement on appeal under Article 38.22, Section 3(a)(2). At trial, however, the appellant's objections had been constitutionally, not statutorily, based. *Id*. at 311. We observed:

> The trial court did not have a fair opportunity to rule on a specific Article 38.22 complaint. The State did not have a fair opportunity to oppose such a complaint. Thus, neither of the two purposes undergirding our rules requiring specificity in objections—to make sure that the trial judge understands what he is being asked to do, and that the opposing party has a chance to actually *oppose* it—is vindicated by allowing the appellant to raise his specific Article 38.22 complaint on appeal.

*Id*. at 316. The same observation pertains in this case.

[10] Of course, when the legal basis for complaint on appeal does not comport with the legal basis for objection at trial, we typically regard the appellate complaint as un-preserved. *E.g.*, *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) ("The point of error on appeal must comport with the objection made at trial.").

capture the entirety of an oral interrogation is, by definition, inaccurate for purposes of Section 3(a)(3) of Article 38.22. It was not until a motion for rehearing in the court of appeals that Appellant explicitly argued that "the recording device . . . was not capable of making an accurate recording since it failed to record" the end of the interrogation. Though the court of appeals denied her motion for rehearing, it did withdraw its opinion on original submission and issued a revised one.

In its revised opinion, the court of appeals glossed over Appellant's belated argument that the recording device was incapable of making an accurate recording. It focused instead on Section 3(a)(3)'s accuracy/no-alteration requirement. It rejected Appellant's claim that the recording itself was inaccurate, observing that "there was no evidence before the trial court at the time of [its] ruling that the conversation continued for any length of time after the recording cut off or that any statements were subsequently made that would call into question the accuracy of the nearly hour-long recorded conversation." *Flores*, 2015 WL 4591707, at *2. With respect to Section 3(a)(3)'s requirement that the recording be unaltered, the court of appeals observed that, "[a]ssuming without deciding that an abrupt ending to a recording constitutes an alteration, there was no evidence that the abrupt ending was anything other than inadvertent." *Id*. at *3. It cited case law from this Court to the effect that "inadvertent anomalies that do not affect the overall reliability of the recording do not constitute the impermissible sort of alteration contemplated by [S]ection 3 of [A]rticle 38.22." *Id*. at *2 (citing *Maldonado v. State*, 998 S.W.2d 239, 244-46 (Tex. Crim. App.

1999)).

## ON DISCRETIONARY REVIEW

We granted discretionary review in this case to examine whether Appellant's recorded custodial statement was inadmissible for two reasons that fall within the ambit of Article 38.22, Section 3(a)(3):[11] 1) because the recording device was not capable of making an accurate recording; and 2) because the absence of the last portion of the recording was an alteration that rendered it unreliable.[12] Only the former argument was expressly raised in Appellant's brief in the court of appeals, however.[13] Appellant never argued on appeal that

---

[11] *See* TEX. CODE CRIM. PROC. art. 38.22 § 3(a)(3) (making admission of the recorded statement of an accused contingent upon a showing that, among other things, "the recording device was capable of making an accurate recording, . . . and the recording is accurate and has not been altered").

[12] Appellant's grounds for review read:

*One*: The Court of Appeals erred in ruling that the audio recording of Mayra's custodial interrogation was admissible notwithstanding the fact that the recording device used was not capable of making an accurate recording.

*Two*: The Court of Appeals applied the wrong standard in holding that the recording equipment's failure to record twenty minutes of Mayra's custodial interrogation did not amount to an alteration that rendered the recording unreliable and untrustworthy.

*Three*: The Court of Appeals misapplied this Court's holding in *Weatherred [v. State*, 15 S.W.3d 540 (Tex. Crim. App. 2000)] because the audio tape failed to meet the requirements of Section 3 of art. 38.22 and the trial court knew that before its ruling to allow the audio recording into evidence.

Petition for Discretionary Review at 2-3.

[13] Appellant's full argument with respect to this aspect of Section 3(a)(3) consisted of one sentence: "[T]he unrecorded portion of the interview is crystal-clear proof that the recording device was not capable of making an accurate recording." Appellant's Brief on Direct Appeal at 14.

the incomplete recording constituted an "alteration" for purposes of Section 3(a)(3). The plurality today grants relief based entirely upon yet a *third* discrete question: whether Appellant's recorded statement is necessarily inaccurate because it is incomplete. Although Appellant *did* specifically make this argument on appeal,[14] the court of appeals never addressed it. Instead, the court of appeals addressed the one argument Appellant did *not* explicitly make on direct appeal: that the lack of the full recording rendered the statement materially *altered* for purposes of Section 3(a)(3). *Flores*, 2015 WL 4591707, at *2-3.[15]

In her petition for discretionary review, Appellant takes issue with the court of appeals' resolution of the alteration issue—the one she did *not* raise on appeal. Instead of focusing on that issue, however, the plurality today reverses the court of appeals, entirely

---

[14] Again, Appellant's argument consisted of a single sentence: "[T]he audio recording was not an 'accurate' recording of [Appellant's] statement because some twenty minutes of the interview was not recorded." Appellant's Brief on Direct Appeal at 14. It appears that the whole interview *was* originally recorded, but the last fourteen-and-a-half minutes was later inadvertently lost in transfer.

[15] To sum up, there are three potential issues in this case under Section 3(a)(3):

1. Was the recording device capable of making an accurate recording?
2. Was the recording altered?
3. Was the recording inaccurate because it was incomplete?

Appellant made arguments 1 and 3 on direct appeal, but not argument 2. The court of appeals addressed only argument 2. In her petition for discretionary review, she now raises arguments 1 and 2, but not argument 3. She does not complain that the court of appeals failed to address arguments 1 and 3. The plurality nevertheless today resolves the case by finding for Appellant solely with respect to argument 3. Rather than resolve the case thus, on an issue the court of appeals never addressed, the plurality today could remand to the court of appeals to resolve it—and, if necessary, also address the question of procedural default in the first instance. But, alas, Appellant has not even asked us to do *that* in her petition for discretionary review. The plurality itself does all the heavy lifting today.

and solely on the basis of an issue that Appellant did (if only sparsely) raise on appeal but that the court of appeals did not address: whether Appellant's custodial statement was inaccurate, in contemplation of Section 3(a)(3), because it was incomplete. *See* Plurality Opinion at 18 (Appellant's statements are inadmissible under Section 3(a)(3) because "the absence of approximately thirty minutes of the recordings . . . renders the recordings inaccurate"). We do not ordinarily review issues that were not decided by the courts of appeals. *Gilley v. State*, 418 S.W.3d 114, 119 (Tex. Crim. App. 2014). Appellant nowhere argues that the court of appeals erred not to reach this issue even though she raised it on appeal. *See McClintock*, 444 S.W.3d at 20 (where a petitioner rightly complains that the court of appeals failed to address an argument, the proper disposition is to remand for the lower court to address the issue in the first instance).

We should simply improvidently grant this petition. The issues in the case are not cleanly presented. There was no pre-trial motion to suppress, nor any hearing on a motion to suppress. In the course of making his objection to the admission of Appellant's recorded statement for the first time during the course of trial, defense counsel never mentioned Article 38.22 *at all*, much less Section 3(a)(3). Plurality Opinion at 4-5. He never clearly articulated any of the possible bases for inadmissibility to be found in that statutory provision. Then, on appeal, Appellant made no argument that her statement was inadmissible specifically because it had been *altered*, in contemplation of the terms of Section 3(a)(3).[16]

---

[16] It is a mystery why the court of appeals nevertheless addressed this issue—but not one that is jurisprudentially important for this Court to resolve.

Instead, she focused primarily on the claim that the recording device was faulty and, therefore, incapable of making an accurate recording—another claim that the court of appeals did not address.[17] But the digital recording device was clearly *capable* of making, and apparently *did* make, an accurate recording of Appellant's statement, though the end of the recording was later lost in the transfer. At trial, however, Appellant never once objected to the loss of the statement's last fourteen-and-a-half minutes because of the *transfer*, once that circumstance was revealed.[18]

What is more, there has never been a claim that the recording that *was* made and preserved was indeed *inaccurate*—at least insofar as it went. Today, the plurality accepts Appellant's argument, raised on appeal but not resolved by the court of appeals, that any previous recording that is, for whatever reason, rendered *incomplete* is *also*, by definition, *inaccurate* for purposes of Section 3(a)(3).[19] But an accused's statement that is incomplete would seem to be objectionable (if at all, at least absent any argument that it has been "altered" in contemplation of Section 3(a)(3)—which, again, was not a claim that was made

---

[17] In her petition for discretionary review, Appellant notes that the court of appeals did not address this issue. Petition for Discretionary Review at 8. But she does not argue that we should remand the case for that reason. *McClintock*, 444 S.W.3d at 20.

[18] *See* note 7, *ante*.

[19] *See* Plurality Opinion at 18 (holding that the "absence" of part of a recording renders it "inaccurate" for purposes of Section 38.22, Section 3(a)(3)). In any event, a recorded statement that is incomplete is not, *ipso facto*, inaccurate. It may very well prove to be the case that what was not recorded, or what was recorded but subsequently lost, was nevertheless wholly consistent with what was recorded or what remains, and does not change the tenor of the recorded statement in the least. To the extent that the plurality may suggest a categorical rule, that strikes me as ill-considered.

in Appellant's appellate brief, but was nevertheless addressed by the court of appeals) only under Section 3(a)(5) of Article 38.22.[20] Neither at trial nor on appeal—nor in her petition for discretionary review—did Appellant ever mention Section 3(a)(5). This is simply not the case to address the inaccurate-because-incomplete issue.

**CONCLUSION**

We have said many times that issues of procedural default are "systemic," meaning that courts of appeals may not reverse a conviction without addressing such questions, whether or not the parties raise them on appeal. *E.g.*, *Darcy v. State*, 488 S.W.3d 325, 327-28 (Tex. Crim. App. 2016). We have also routinely declined to make a party's arguments for her on appeal. *E.g.*, *Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011) ("[T]his Court is under no obligation to make appellant's arguments for her."). Yet, in this case, the plurality reverses an appellate judgment that affirms a conviction, basing that reversal exclusively on an argument that the court of appeals did not address and which may not have been adequately preserved at trial. In our capacity as a discretionary review court—the very capacity in which we are acting in this case—our job is to shepherd the jurisprudence so that the courts of appeals have the clearest possible blueprint for rendering justice at the first-tier appellate level. That is not what the plurality is doing here.

Perhaps in recognition that factually unique cases such as this one often fail to provide

---

[20] *See* TEX. CODE CRIM. PROC. art. 38.22 § 3(a)(5) (requiring timely notice to defense counsel, providing him a "true, complete, and accurate copy" of a recorded statement); *see also* TEX. CODE CRIM. PROC. art. 38.22 § 3(b) (requiring the recorded statements of an accused to be preserved).

useful appellate precedents, the court of appeals did not designate its opinion in this case for publication. The case is procedurally muddled, and while that is only partly Appellant's fault, she does not attempt to make the court of appeals' own contribution to the confusion any part of her complaint on discretionary review. Second-guessing the court of appeals' judgment under these circumstances fails to contribute anything of significance to the jurisprudence. On the other hand, given the procedural posture of the case, *reversing* the court of appeals' judgment here threatens to send the wrong message to all of the courts of appeals with respect to appropriate appellate review, and it risks (at least) the creation of an ill-considered precedent. That is the very opposite of what we would usually hope to achieve in an opinion on discretionary review.

I respectfully dissent.

FILED:              May 23, 2018
DO NOT PUBLISH