**Opinion issued March 5, 2019**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-17-00959-CR

—————————————

**SANDRA LOPEZ FLORES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 209th District Court**
**Harris County, Texas**
**Trial Court Case No. 1439487**

---

## MEMORANDUM  OPINION

Without an agreed sentencing recommendation, Sandra Lopez Flores pleaded

guilty to the first-degree-felony offense of misapplication of fiduciary property

valued over $200,000.[1]  Following the preparation of a presentence investigation ("PSI") report, the trial court conducted a sentencing hearing.  At the end of the hearing, the trial court found Flores guilty and sentenced her to six years in prison.  In one issue on appeal, Flores complains that her due-process rights were violated by the State's alleged failure to correct certain testimony by one of its witnesses during the sentencing hearing.

We affirm.

## Background

Late in 2004, A. Acosta hired Flores as an escrow agent for his business, which operated as a fee office for Texas Nations Title.  As an escrow agent, Flores had access to funds paid on the day of closing for real property purchases and for property refinancing.  Over the course of nearly a year, starting in 2008, Flores redirected, for her own use, funds she received in her role as escrow agent.  The funds Flores took were involved in over three dozen home refinancing transactions intended to pay off the first mortgage on the properties and to pay property taxes.  Multiple property owners were threatened with foreclosure because Flores had taken

---

[1]  Flores's indictment alleged that she had committed misapplication of fiduciary property valued at more than $200,000 from 2008 until 2009.  In 2015, the legislature amended Penal Code Section 32.45 to require a misapplication of an amount over $300,000, rather than over $200,000, for a first-degree felony. *See* Act of May 31, 2015, 84th Leg., R.S., ch. 1251, § 21, 2015 Tex. Sess. Law Serv. 4208, 4217 (current version TEX. PENAL CODE § 32.45(b)).

the funds intended to pay off the mortgages. In all, Flores's actions affected over one million dollars' worth of transactions. Acosta lost his business, in part, due to Flores's actions.

Related to Flores' actions, Acosta enlisted the help of an attorney, A. Gabbert, to represent him and to assist the homeowners affected by Flores's scheme. Gabbert spent over 5 years and 500 attorney hours untangling Flores's scheme and helping the affected homeowners avoid foreclosure.

In 2014, Flores was indicted for the first-degree-felony offense of misapplication of fiduciary property valued at over $200,000. Flores pleaded guilty to the offense, and the trial court ordered the preparation of a PSI report. After the report's preparation, the trial court conducted the sentencing hearing.

At the start of the sentencing hearing, the parties agreed that there were no outstanding liens pending against any of the named complainants' properties. The State informed the trial court that its investigator had confirmed that liens on the properties had been released.

The State called Gabbert to testify. After questioning by the State and the defense, the trial court asked Gabbert whether there was restitution the court could order Flores to pay if the court decided to place Flores on community supervision. Gabbert answered,

> There are two of the homeowners who were affected in this. Those were the Duartes and . . . the Carlos[es]. And when I checked before I

3

came to testify, because we could never figure out exactly what happened to their properties because the Department of Insurance, that's one that we couldn't work out. And Bank of America owns both of their properties and those individuals are actually living in their homes and renting their homes from Bank of America. So I think that's something that should be looked at . . . .

Those two properties, [A.] Carlos. . . and [C.] Duarte, the Bank of America owns their properties and they are renting those properties from them. So that's something I think would need to be addressed.

On re-cross examination, the following exchange then occurred between the

defense and Gabbert:

[Defense counsel:] Ms. Gabbert, are you aware that the probation officer interviewed Mr. Duarte?

[Gabbert:] No, I'm not. Like I said, that's what I was looking at before I came into the courtroom. I said that needs to be checked out.

Q. And Mr. Duarte says the only money that he is owed is some lost wages?

A. Okay.

Q. And no other money?

A. Well, that's why I said that needs to be checked out.

Q. And are you aware that on July 26, 2011 all liens against the property of Mr. Duarte were released and he has title to the property?

A. That's not what is reflected in the HCAD records.

Q. So the release of lien that was filed on July, in July 2011 doesn't apply to Mr. Duarte?

A. No, I'm saying if that's accurate, that's wonderful. I said that needs to be checked out. But I have a concern about that.

4

The State agreed that the lien had been released on the Duartes' property. It reiterated that its investigator had confirmed that the liens had been released on the complainants' properties.

The trial court then noted that Gabbert had "said she was under the impression [the Carloses] are paying rent on property they own." The State's attorney responded, "I'm not aware of any [such] arrangement."

Defense counsel then showed the physical lien release to the trial court for the Carloses' property. The court asked Gabbert whether she had any concern that the lien release was not correct. Gabbert answered, "No, if that's what's recorded. I just thought those two [the Duarte and Carlos properties] needed to be checked out." The trial court said, "And they were [checked out]." Gabbert agreed. Later in the hearing, the defense offered into evidence the lien releases for the Duartes' and Carloses' properties without objection from the State.

At the end of the punishment hearing, the trial court found Flores guilty of the offense of misapplication of fiduciary financial over $200,000, and it sentenced her to six years in prison. Flores did not file a motion for new trial. This appeal followed.

## Due-Process Complaint

In her sole issue, Flores contends her due process rights were violated because the State failed "to correct factually false testimony during the punishment hearing."

5

*See* U.S. CONST. amend. XIV.  Specifically, Flores asserts that Gabbert's testimony indicating that the Duartes and Carloses "had lost their homes in foreclosure and were paying rent to a bank to continue to live in their homes" was false testimony. Flores asserts that the State knew this was false testimony, had a duty to correct it, and failed to correct it.  She claims that, as a result, her due-process rights were violated.

Flores did not raise the due-process complaint in the trial court.  The State asserts that Flores's failure to raise the complaint in the trial court forfeited her right to raise the complaint on appeal.  We agree with the State.

## A.    Legal Principles

A conviction procured using false testimony is a denial of the due process guaranteed by the Federal Constitution.  *Ex parte Ghahremani*, 332 S.W.3d 470, 477 (Tex. Crim. App. 2011) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)).  The use of false testimony at the punishment phase is also a due-process violation.  *Id.* (citing *Estrada v. State*, 313 S.W.3d 274, 288 (Tex. Crim. App. 2010)).  A due-process violation may arise not only through false testimony specifically elicited by the State, but also may arise by the State's failure to correct testimony it knows to be false.  *Id.*

To preserve an issue for review, an appellant must present to the trial court a timely request, objection, or motion stating the specific grounds for her complaint.

6

TEX. R. APP. P. 33.1. We are mindful that, when the complaint involves the falsity of testimony, an appellant's failure to object may be excused if she could not reasonably have known that the testimony was false at the time it was made. *See Estrada v. State*, 313 S.W.3d 274, 288 (Tex. Crim. App. 2010) (holding that appellant did not waive error by failing to raise timely objection in trial court to testimony of State's witness, who incorrectly testified about prison classification system at punishment phase, because appellant "could not reasonably be expected to have known that [the witness's] testimony was false at the time that it was made"). However, an appellant forfeits her due-process complaint, arising from the State's submission of—or failure to correct—false statements, when the record shows that she was aware of the alleged falsehoods but did not make a timely and specific objection. *See Valdez v. Texas*, No. AP-77,042, 2018 WL 3046403, at *7–*8 (Tex. Crim. App. June 20, 2018) (not designated for publication) (holding appellant waived due-process complaint based on State's submission of—or failure to correct—inconsistent statements contained in admitted exhibits because appellant's counsel had been aware of inconsistent statements and failed to object); *Haliburton v. State*, 80 S.W.3d 309, 315 (Tex. App.—Fort Worth 2002, no pet.) (holding complaint on appeal that State's witnesses lied under oath waived because appellant did not object at time of testimony); *see also Clark v. State*, 365 S.W.3d 333, 339–40 (Tex. Crim. App. 2012) (concluding that due-process complaint based on alleged

7

prosecutorial misconduct must be raised in trial court to be preserved); *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002) (recognizing that failure to object during trial forfeits complaints about admissibility of evidence even when alleged error concerns constitutional right).

## B. Analysis

Here, Flores's trial counsel knew that Gabbert's complained-of testimony, indicating that the Duartes and the Carloses were renting their respective homes from the banks and did not have title to their respective properties, was not correct information. The record shows that defense counsel cross-examined Gabbert about these issues. He presented lien releases for the properties, and he questioned Gabbert about whether she knew that the lien had been released on the Duartes' property. Defense counsel also asked Gabbert if she was aware that Mr. Duarte had indicated that the only money owed to him, because of Flores's conduct, was lost wages. And the defense was present when the trial court questioned Gabbert about the Carloses' lien release. Finally, defense counsel presented the lien releases to the trial court during the exchange with Gabbert and later offered the lien releases into evidence.

In sum, the record shows that Flores's counsel was fully aware of the inaccuracies in Gabbert's testimony that now form the basis of her due-process complaint on appeal. On these facts, we hold that Flores had a duty to raise a timely and specific objection in the trial court to the State's alleged failure "to correct

8

factually false testimony during the punishment hearing." Because she did not object, Flores failed to preserve for appeal her due-process complaint based on the State's alleged failure to correct false testimony. *Cf. Estrada*, 313 S.W.3d at 288; *Saldano*, 70 S.W.3d at 888–90; *see Valdez*, 2018 WL 3046403, at *8; *see also Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (concluding that failure to object at trial waived federal constitutional due-process claim).

We overrule Flores's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Landau.

Do not publish. Tex. R. App. P. 47.2(b).