**Affirm and Opinion Filed August 25, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-01127-CR**

**BRANDON EDWARDS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause No. F-1951310-H**

## MEMORANDUM OPINION

Before Justices Molberg, Pedersen, III, and Miskel
Opinion by Justice Molberg

Following a jury's finding of guilt, the trial court convicted appellant Brandon Edwards of capital murder of a child under ten years old and imposed a mandatory sentence of life imprisonment without parole. *See* TEX. PENAL CODE §§ 19.03(a)(8) (offense), 12.31(b)(2) (mandatory sentence). On appeal, Edwards argues the evidence was legally insufficient to prove he had the requisite mental state necessary to be found guilty of the offense and that the trial court erred in allowing certain video evidence to be played to the jury. For the reasons below, we affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

# I. BACKGROUND

Edwards was charged with capital murder in an indictment alleging that, on or about January 12, 2019, in Dallas County, Edwards,

> did unlawfully then and there intentionally and knowingly cause the death of [B.E.]; an individual, hereinafter called deceased, by ASPHYXIATING THE DECEASED AND BY CAUSING THE DECEASED TO STOP BREATHING AND BY AN UNKNOWN MANNER AND MEANS, and the deceased was at the time of the offense under ten years of age.

The indictment further alleged that at the time of the offense, Edwards "used and exhibited a deadly weapon, to wit: [his] hand and an unknown object, the exact nature and description of which is unknown to the grand jury[.]"

Among other evidence, the jury heard evidence that B.E., Edwards's son, was three years old when he was killed. B.E. had been living in an apartment with his mother, older sister, and Edwards at the time. B.E.'s mother and older sister both testified about the circumstances leading up to B.E. being killed, which included Edwards attacking B.E.'s mother inside their apartment, cutting and stabbing various parts of her body with a steak knife and by biting her hard enough to break her skin and scar it as she was trying to defend herself; B.E.'s mother escaping out the front door and to a neighbor's apartment; and Edwards "snatch[ing]" B.E. out of B.E.'s sister's arms after she ran out the front door with him, after which she saw Edwards close the front door and lock it—leaving B.E.'s mother and sister outside the locked apartment, and only B.E. and Edwards inside.

The jury also heard from Jeremy Williams—a witness who had been talking outside with Edwards's neighbor when B.E.'s mother and sister ran out of the apartment—who testified he saw Edwards violently "snatch" B.E., go back in, and slam the door. Williams then heard Edwards hollering and heard B.E. screaming and crying, but at some point, B.E. "went from screaming to nothing," and the sound "just stopped" within a matter of seconds. Williams's wife called 911, and personnel from both the local police and fire departments arrived on the scene.

Kimberly Anderson, a paramedic and firefighter who arrived there, testified that when she arrived, police were waiting on a second unit to make entry into the apartment. As she waited, she saw Edwards in the upstairs window, screaming at the police. Officer Matthew Pearce, one of the first police officers on the scene, testified Edwards was yelling, "Kill me. Shoot me." Williams also saw Edwards in the window and heard him say, "I already did it."

Given the exigent circumstances and their knowledge that someone had been stabbed and that B.E. was inside the apartment, once other officers arrived, Officer Pearce began kicking the door down and got the door open. Anderson saw Edwards push the screen out, dangle out the window, land in the bushes, and begin running through the apartment complex. Other police officers who had arrived at the scene tased Edwards to detain him and place him into custody, and Anderson and her partner then followed police into the apartment.

B.E. was found in the front bedroom, without a pulse, and with a large injury on his forehead. Although Anderson "realize[d] [B.E.] had already passed," her partner took B.E. to the ambulance and, the two of them, with another partner, began various emergency medical treatments, including conducting CPR and administering epinephrine as they transported B.E. to the hospital. B.E. did not regain a pulse during transport. When Anderson was asked if, based on what she saw, her training and experience "told her this was an intended, physical act," Anderson answered, "Yes." She also testified there was nothing that led her to believe B.E. had choked on an object.

A medical examiner testified about the injuries to and condition of B.E.'s body based on her autopsy of him and believed both smothering and strangulation occurred. She stated the cause of death listed on the death certificate was "homicidal violence, including blunt and sharp-force injuries." After explaining what the use of the phrase "homicidal violence" meant,[1] she agreed that in laymen's terms, somebody caused B.E. to stop breathing by some sort of asphyxiation event and caused some blunt and sharp-force injuries to his body.

A jury found Edwards guilty of capital murder as charged in the indictment and answered "yes" to the special issue regarding his alleged use or exhibition of a

---

[1] She testified, "Homicidal violence is a term that we use when – it's more of an umbrella term to include different possible ways, specifically of asphyxiation. When we can't tell for sure whether this was a ligature strangulation, a manual strangulation, a smothering – any of those are possible – we can put them under the umbrella term of homicidal violence, which is saying that somebody caused this child's death and it included those elements."

deadly weapon during the commission of the offense. The trial court pronounced sentence, entered judgment, and certified Edwards's right to appeal. Edwards timely appealed and filed a motion for new trial that was overruled by operation of law.

## II. ISSUES AND ANALYSIS

### A. Sufficiency of the Evidence

In his first two issues, Edwards argues the evidence was legally insufficient to support his conviction and to prove he had the requisite mental state necessary to be found guilty of capital murder.

#### 1. Review Standards

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.).

The factfinder is the sole judge of witness credibility and the weight to be given testimony. *See Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the factfinder. *Bohannan v. State*, 546 S.W.3d 166, 178 (Tex. Crim. App. 2017). "When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination." *Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015).

In conducting our review, we consider "all evidence in the record of the trial, whether it was admissible or inadmissible." *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013) (citations omitted); *see also Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006) ("[A] reviewing court is permitted to consider all evidence in the trial-court record, whether admissible or inadmissible, when making a legal-sufficiency determination.").

In *Musacchio v. United States*, 577 U.S. 237 (2016), the Court explained:

> Sufficiency review essentially addresses whether "the government's case was so lacking that it should not have even been submitted to the jury." . . . . On sufficiency review, a reviewing court makes a limited inquiry tailored to ensure that a defendant receives the minimum that due process requires: a "meaningful opportunity to defend" against the charge against him and a jury finding of guilt "beyond a reasonable doubt." . . . . The reviewing court considers only the "legal" question "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*Id.* at 243 (internal citations omitted). In other words, "All that a defendant is entitled to on a sufficiency challenge is for the court to make a 'legal' determination whether the evidence was strong enough to reach a jury at all." *Id.* at 244 (quoting *Jackson*, 443 U.S. at 319).

### 2.    Analysis

Edwards argues the evidence was legally insufficient to support his conviction because there was no evidence he "ever held the intention to kill the child" and no evidence he "knowingly killed the child, as 'knowingly' is defined in the Texas Penal Code."

Jurors were instructed that they would find Edwards guilty of capital murder as charged in the indictment if they found from the evidence beyond a reasonable doubt that Edwards intentionally or knowingly caused the death of B.E.[2] by asphyxiating B.E. or by causing B.E. to stop breathing or by an unknown manner and means and that B.E. was at the time of the offense under ten years of age.

Based on the record before us, we conclude a rational juror could find beyond a reasonable doubt each of these elements. It is undisputed that B.E. was under ten years old at the time of his death. Edwards had sole access to B.E. when B.E. died. *See Cuadros–Fernandez v. State*, 316 S.W.3d 645, 654 (Tex. App.—Dallas 2009, no pet.) (concluding evidence was sufficient in capital murder case and stating, "When an adult defendant has sole access to a child at the time the child sustains the injuries, the evidence is sufficient to support a conviction for injury to a child, or murder if the child dies."). Additionally, B.E.'s death certificate listed "homicidal violence,[3] including blunt and sharp-force injuries" as his cause of death, and the

[2] The charge included the definitions for "intentionally" and "knowingly" as defined in the Texas Penal Code. Texas Penal Code § 6.03(a) states, "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *See* TEX. PENAL CODE § 6.03(a). Texas Penal Code § 6.03(b) states, "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *See* TEX. PENAL CODE § 6.03(b). Capital murder is a result of conduct offense, though it may contain both nature of conduct and/or nature of circumstances elements depending upon the underlying conduct which elevates the intentional murder to capital murder. *White v. State*, No. 05-19-00438-CR, 2020 WL 4745547, at *10 (Tex. App.—Dallas Aug. 17, 2020, pet. ref'd) (mem. op., not designated for publication).

[3] As previously indicated, the medical examiner explained "[h]omicidal violence" is "an umbrella term to include different possible ways, specifically of asphyxiation. When we can't tell for sure whether this

medical examiner explained this meant, in laymen's terms, somebody caused B.E. to stop breathing by some sort of asphyxiation event and caused some blunt and sharp-force injuries to B.E.'s body. Also, Anderson, the paramedic and firefighter who treated B.E. after police gained entry into the apartment, described B.E.'s condition and agreed that based on what she saw, her training and experience "told her this was an intended, physical act."

We overrule Edwards's first two issues.

## B. Allowing Portion of Forensic Interview of Minor Child Witness

Next, we consider his third issue, in which he argues, in essence, that the trial court erred by overruling his objection to the admission and publishing to the jury of State's exhibit thirty-five, a sixteen-second portion of a taped forensic interview of Edwards's daughter at the local child advocacy center on the night of the offense. Specifically, Edwards argues the evidence was inadmissible under Texas Rule of Evidence 107 because Edwards had not played any portion of the tape and thus there was no impression that needed to be corrected. *See* TEX. R. EVID. 107.[4] But as the State argues, Edwards did not preserve this argument for appellate review.

_____

was a ligature strangulation, a manual strangulation, a smothering – any of those are possible – we can put them under the umbrella term of homicidal violence, which is saying that somebody caused this child's death and it included those elements."

[4] Texas Rule of Evidence 107 states,

> If a party introduces part of an act, declaration, conversation, writing, or recorded statement, an adverse party may inquire into any other part on the same subject. An adverse party may also introduce any other act, declaration, conversation, writing, or recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent. "Writing or recorded statement" includes a deposition.

"Generally, error must be presented at trial with a timely and specific objection, and any objection at trial which differs from the complaint on appeal preserves nothing for review."  *Sterling v. State*, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990) (citations omitted).  A timely, specific objection and ruling by the trial court, or refusal to rule, is generally required in order to preserve a complaint for appellate review.  *See* TEX. R. APP. P. 33.1(a)(1)–(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

"The two main purposes of requiring a specific objection are to inform the trial judge of the basis of the objection so that he has an opportunity to rule on it and to allow opposing counsel to remedy the error."  *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).  And, as is pertinent to our decision here, the party's complaint on appeal must comport with the objection made at trial.  *Id*.  In determining whether a complaint on appeal does so, we look to the context of the objection and the shared understanding of the parties at the time.  *Id*.

Here, Edwards's argument on appeal does not comport with his objection in the trial court, where Edwards objected on two bases:  (1) "fundamental unfairness," due to what he claimed was an inconsistency between evidence the State turned over to the defense and information Edwards's daughter testified to at trial,[5] and (2) bolstering.  Because Edwards made no argument below regarding the substance of

---

[5] Edwards's counsel stated this "doesn't go to the admissibility of the" information.

rule of evidence 107 when objecting to the challenged evidence in the trial court, Edwards failed to preserve error on this issue and presents nothing for our review. *See Sterling*, 800 S.W.2d at 521 ("[A]ny objection at trial which differs from the complaint on appeal preserves nothing for review."); *Clark*, 365 S.W.3d at 339 (party's complaint on appeal must comport with the objection made at trial).

We overrule Edwards's third issue.

### III. CONCLUSION

We affirm the trial court's judgment.

/Ken Molberg/
KEN MOLBERG
JUSTICE

211127f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

BRANDON EDWARDS, Appellant

No. 05-21-01127-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1, Dallas County, Texas Trial Court Cause No. F-1951310-H. Opinion delivered by Justice Molberg. Justices Pedersen, III and Miskel participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 25th day of August, 2023.